THE WEST CHICAGO STREET RAILROAD COMPANY

*v.*

THE CITY OF CHICAGO.

*Opinion filed April 21, 1898.*

1. EMINENT DOMAIN—*fair cash value of vacant property is the measure of damages.* The fair cash value of property vacant at the time of filing a petition to condemn the same is the measure of compensation; but in proving such value the defendant may show the highest and best use, and, in fact, all uses, for which the property is adapted and its value for such uses.

2. SAME—*probable future use of condemned property is not the subject of expert testimony.* What probable use the owner of vacant property sought to be condemned may make of the same in the near future is not the subject of expert testimony.

3. SAME—*what a proper modification of instruction concerning damages.* All reference to the question of damages to land not taken is properly stricken out of the defendant's instructions concerning compensation, where there is no evidence of any diminution in value of or damage to the land not taken, caused by the taking of the property condemned.

4. SAME—*condemnation verdict not disturbed if within the range of evidence.* A condemnation verdict returned, on conflicting evidence, by a jury which viewed the premises, will not be disturbed on appeal unless so manifestly against the evidence as to indicate misconduct on the part of the jury.

5. JUDGMENTS AND DECREES—*a judgment is certain which can be made certain by the record.* A condemnation judgment which recites the verdict finding a certain sum as damages to the lessee of the property and a certain sum to the reversioner is sufficiently certain, though it directs the payment of the money to the county treasurer for the use of the "owner or owners" of the property, where the record shows who the lessee and reversioner are.

APPEAL from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

EGBERT JAMIESON, and MAHER & GILBERT, for appellant:

In determining the value of land taken, or damages to land not taken, the value is to be determined with reference to any lawful use to which the land might be put.

The fact that at any time it may be put to any of a variety of other uses than the particular use, entitles the respondent, as a matter of law, to its value for those uses if the land is taken, and to the diminution in that value if it is not taken but damaged. *Haslam* v. *Railroad Co.* 64 Ill. 353; *Railroad Co.* v. *Jacobs*, 110 id. 414; *Railway Co.* v. *Wood*, 124 id. 329; *Railroad Co.* v. *Chicago*, 156 id. 98.

If land sought to be condemned for public use has a market value for the purpose of subdivision into lots and blocks it may be properly proven. The jury may take into consideration each and every element that may enter into the true market value of the property. *South Park Comrs.* v. *Dunlevy*, 91 Ill. 49.

When it appears that the amount fixed by a condemnation verdict is inconsistent with and contrary to all the proofs, it is the duty of the court to interfere and submit the case to another jury. *Railroad Co.* v. *Schneider*, 127 Ill. 144.

Error in instructions given for petitioner in condemnation, relating to the rule for allowing damages, is not cured because one given for defendant announced the proper rule. *Railroad Co.* v. *Naperville*, 166 Ill. 87.

Charles S. Thornton, Corporation Counsel, and William H. Arthur, Assistant, for appellee.

Mr. Justice Carter delivered the opinion of the court:

This is an appeal from a judgment of condemnation entered in the circuit court of Cook county in favor of appellant and against appellee. The city of Chicago, the appellee, filed its petition March 9, 1895, to condemn a strip of land 33 feet by 600 feet, for the purpose of widening Spaulding avenue between Jackson and Van Buren streets, this strip being the west 33 feet of a ten-acre tract, the fee of which tract is in the Chicago West Division Railway Company, and which has been leased to appellant, the West Chicago Street Railroad Company,

for the term of nine hundred and ninety-nine years. The cause was heard before a jury, who viewed the premises, and, after hearing the testimony, returned a verdict fixing appellant's damages at $6751.80 and the reversioner's damages at one dollar, and further found that no other property would be taken or damaged by the proposed improvement. A motion for a new trial was overruled and judgment entered on the verdict, from which judgment the lessee has appealed to this court.

The first error assigned is the exclusion of certain evidence offered by appellant. Counsel for appellant asked the witness F. H. Roeschlaub this question: "What, in your opinion, will be the uses and purposes to which the ten-acre tract will be put in the near future by the lessee, the West Chicago Street Railroad Company?" It needs no argument to show that it was not error to refuse to allow this question to be answered. Even if it were proper to prove what uses and purposes the property might be devoted to in the near future, such proof could not be made by the mere opinion of the witness as a matter of expert testimony. The strip in question, of the width of 33 feet, was, at the time of the filing of the petition and at the time of trial, vacant and not devoted to any special use, and its fair cash value at the time of filing the petition was the measure of compensation to which appellant was entitled; but as tending to prove such value, the respondent was entitled, and was permitted, to prove the highest and best use,—in fact all the uses,—for which the property was adapted, and its value for such uses. Roeschlaub testified that he was familiar with the uses and purposes to which the ten-acre tract was, at the time of the trial, put by appellant; that there were two buildings on the south-east corner of the tract (but not on the strip taken); that "the south building had been used as a car-house for the Van Buren street line—what is termed the Van Buren street line cars—operating on Van Buren street. The building north of that

has been recently, until a change in the motive power, been used as a stable for the horses used in moving these cars, but a change is going on there now, part of which is completed, which will turn that north building—changes are already made excepting the placing of tracks—to turn the north building into a car-house for the storage of cars; otherwise the property has been used to a very large extent as a store-yard for the track department." Then, after testifying as to the value of the land,—especially of the strip taken,—for general purposes or when subdivided into lots, he further testified: "The strip of ground in question has a special value to the railroad company, because the railway company for its purposes must have large tracts of land, and those tracts of land must be unsubdivided.   I mean by that, that it is a very dangerous thing for them, and almost impossible for them, to use a piece of ground through which alleys, particularly, run, or even streets, on account of the danger in handling the cars,—in tracking from one part of their property to the other.   The only unsubdivided piece is what is known as the 'Otis tract,' and that is on Kedzie avenue, abutting on the Wisconsin Central railroad; otherwise the property there is all subdivided.

Q. "Now, if this 33 feet is taken by the city here, what, if any, additional cost or expense would the West Chicago Street Railroad Company have to bear in order to be in the same position as it is in reference to its present condition, having now the exclusive ownership of this 33 feet?

A. "The 33 feet in question is a piece of ground 33 feet by 600,—a strip of ground 33 feet wide, which will accommodate four street railway tracks.   That would be 2400 feet of track storage.   Now, if it were necessary for them to give up this tract of land, it would, of course, deprive them of the storage room for the eighty cars, and necessitate the operation of another station for the storage of these cars.

Q. "If the 33 feet is taken, what effect,—considering the 33 feet—the highest and best use to which it can be put by the railroad company,—what would be the effect?

The court: "What is the value for that purpose?

Mr. Gilbert: "Yes; what is the value for that purpose?

A. "Well, it is valued for that purpose—

The court: "Say in dollars and cents.

Mr. Gilbert: "What is the value for that purpose in dollars and cents?

A. "It would be at least $40,000 for street railway purposes."

We think it clear that appellant was allowed sufficient latitude in its proof as to the special value of the property for its special uses, notwithstanding the court refused to allow offers of testimony, more or less of a speculative character, as to the uses which appellant contemplated making of the property. The interests of appellant on this phase of the case were also protected by the court in the following instructions to the jury:

3. "The court instructs the jury that your award for compensation should be for the highest and best use and purposes to which the property in question could be put, as shown by the evidence, at the time of the filing of the petition in this case.

4. "The court instructs the jury that if you believe, from the evidence, that the property in question has any particular or special value to the lessee for its uses and purposes, then it is your duty to allow to said lessee its full fair cash value for such purpose as is shown by the evidence, at the time of the filing of the petition of this case."

It is urged, however, that the court erred in giving the fifth instruction for appellee. We do not see any objection to this instruction, and, taken in connection with the above instructions for appellant, we think the jury were fully instructed as to the measure of damages.

It is further urged as error that the court modified the seventh and eighth instructions for appellant by striking out all reference in them to damages done to property not taken. There was no evidence introduced of any diminution of the value of or damage to the lands not taken, mentioned in the cross-petition, caused or which would be caused by the taking of the strip in question, and such modification was therefore not error.

The contention most strenuously made by counsel for appellant appears to be that the verdict is contrary to the evidence. Two witnesses testified for the city as to the value of the land taken, one fixing it at $4447.50 and the other at $4436.45. Four witnesses testified for appellant. The witness Roeschlaub fixed it at $18,250 if the property is considered as other property in that locality, but at $40,000 for railroad purposes. The other witnesses for appellant valued the land taken at, respectively, $17,-820, $14,850 and $17,000. The jury viewed the premises and found the just compensation to be $6751.80. It has been often decided by this court, that in cases of this kind, where the jury have viewed the premises and the evidence is conflicting, we will not interfere with the verdict unless it is so manifestly contrary to the preponderance of the evidence as to indicate misconduct on the part of the jury. (*Braun* v. *Metropolitan West Side Elevated Railroad Co.* 166 Ill. 434.) While it might appear from the cold record before us that the preponderance of the evidence was that the property is worth more than the amount allowed, still, as both the court and jury saw and heard the witnesses and the jury viewed the premises, we cannot say that the verdict is so manifestly contrary to the preponderance of the evidence as to indicate any misconduct or improper motive on the part of the jury.

The last objection is to the form of the judgment entered in the court below. It directs that the sums of money awarded by the jury in their verdict, which verdict was recited in the judgment, be paid to the county

treasurer for the use of the owner or owners of said property, etc. The verdict finds that the compensation be paid to the "lessee" and to the "owners of the reversionary interest." Who the lessee is appears clearly from the record in the case, and that is certain which can be rendered certain. There is no uncertainty in the judgment, (*Fink* v. *Disbrow,* 69 Ill. 76,) and it will be affirmed.

*Judgment affirmed.*