NANCY B. LEWIS *et al.*

*v.*

THE ENGLEWOOD ELEVATED RAILROAD COMPANY.

*Opinion filed October 23, 1906.*

1. EMINENT DOMAIN—*the assessed valuation of land cannot be proved as tending to show value.* In a proceeding to condemn land, the assessed valuation thereof by the assessor, as shown by tax receipts, cannot be proved as tending to show the value of the land.

2. SAME—*when refusal to permit witnesses to testify is prejudicial error.* In a proceeding to condemn a strip of land, occupied by store buildings, for the right of way of an elevated railroad company, it is prejudicial error to refuse to permit witnesses who had occupied the stores and were familiar with the situation to give their opinion as to what extent the construction and operation of the railroad would affect the rental value of the store buildings not actually taken for right of way.

APPEAL from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

This is a condemnation proceeding begun by appellee, the Englewood Elevated Railroad Company, to condemn a strip of land belonging to appellants, situated in Henry B. Lewis' subdivision of lots 2, 6 and 7 of block 3, Linden Grove subdivision of the north-west quarter of section 21, town 38, north, range 14, east of the third principal meridian, in Cook county. The land originally consisted of four lots, bounded on the north by Sixty-third street, on the west by Lowe avenue, on the east by Wallace street and on the south by a tract of land occupied by the Nichols coal yards, and was owned by Henry B. Lewis. It was three hundred feet from north to south and about two hundred and thirty-five feet from east to west in area. Lewis subdivided this tract into twenty lots, of which 1 to 8 fronted on Sixty-third street, 9 to 14 on Lowe avenue, and 15 to 20 on Wallace street. The Western Indiana Railroad Company occupied all of Wallace street and the east sixteen or seventeen feet of an alley extending north and south along the entire east front of the property in question. Across the rear of the lots fronting on Sixty-third street was an alley fourteen feet wide and to be left open to a height of not less than fourteen feet; also a north and south private alley fourteen feet wide was platted across the rear ends of the lots fronting on Wallace street. Access was thus given to the front and rear of all the lots in said tract. Soon after this plat was made Lewis sold lots 2, 7 and 8, fronting on Sixty-third street, lot 9, except the north two feet thereof, fronting on Lowe avenue, and lot 20, fronting east on the alley adjoining Wallace street. This left Lewis owning lots 3, 4, 5 and 6 on Sixty-third street, with a frontage of one hundred and six feet, 10, 11, 12, 13 and 14 on Lowe avenue, with a frontage of one hundred and fifty-six feet, and 15, 16, 17, 18 and 19, with a frontage of one hundred and thirty-six feet on the alley adjoining Wallace street. Lewis died before this proceeding was begun and the property is now owned by appellants. The land sought to be condemned was a strip east and west through the lots

fronting on Lowe avenue and Wallace street, and took all of lot 16 and the south nineteen feet of 17 fronting on Wallace street, and the north twenty-two feet of lot 13 and the south six feet of lot 12 fronting on Lowe avenue. The only improvements on the parts of lots 12 and 13 taken is a part of a stable which is built on the rear of lot 14 and extends over on lot 13. This stable was used by the commission men, who kept horses. Lot 16 and that part of lot 17 proposed to be taken was improved by a frame one-story barn, seventy-five feet long, forty-four feet wide and eighteen feet high, with a shed at its west end near the alley. The barn had a driveway through the center, and one side was divided into bins, store rooms, office and platform scales. It was built in 1893 from second-hand material and was used as a hay barn. The shed in the rear was about twelve feet long and eight feet high and was used for the horses. This barn and shed are wholly on the property taken by the elevated railroad company.

The land belonging to appellants which is not taken by this proceeding is improved as follows: Lot 14 and the south six feet of lot 13 has a portion of the stable above referred to, which begins near the south side of lot 14 and extends north a distance of about sixty feet. On the southwest part of lot 14 is a small cottage. There are no improvements on lot 15, which has recently been rented to the Nichols Coal Company. A six-foot sewer from the Lowe avenue property crosses on the line between lots 17 and 18 of the Wallace street property. Lots 18 and 19 are unimproved, with the exception of a small temporary one-story frame building which is used for a blacksmith's shop. The eighty feet frontage on Lowe avenue immediately north of the proposed improvement, being lots 10, 11 and the north twenty-two feet of lot 12, are improved by four one-story brick buildings constructed in the spring of 1900. They each have twenty feet front, are eighty-five feet deep, with basement and elevators, have loading platform in rear and were

used for carrying on a commission business. The two-foot strip of property on Lowe avenue is not improved. Upon the lots fronting on Sixty-third street, which are one hundred and fourteen feet deep, are located six stores, the first four on the east being built in 1892 and the other two in 1893. They are fifty feet deep, with basements under them, are frame and one story high. The two west ones have a frontage of fifteen feet each, and are now occupied by Weber & Co. in connection with their wholesale grocery store. The next one has fifteen feet frontage, and the three stores on the east have each twenty feet frontage and are used for the commission business. Lot 1 owned by appellants is taken up by the Western Indiana Railroad Company and the alley extending north and south. The jury found the damages for land taken to be $4400 and that the land not taken was not damaged. From the judgment on the verdict this appeal is prosecuted.

PHELPS & CLELAND, for appellants.

FRANCIS W. WALKER, and EDWARD C. NICHOLS, (NOBLE B. JUDAH, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The evidence as to the value of the property taken was, as is not unusual in such cases, conflicting. Appellants contend it was especially valuable on account of the use for which it was intended and adapted and for which a considerable portion of it had been used for some years. This particular use was for stores for men engaged in the commission business.

Numerous errors are assigned as reasons for a reversal of this judgment, among which is that the damages assessed for property taken is too low and not supported by the evidence. Each side called four witnesses on that subject, and if that were the only question to be determined it is not probable

we would feel called upon to reverse the judgment because it is not for a sufficient amount.

On cross-examination of William Carter, one of appellants, he was asked to produce the tax receipts for taxes paid for the year 1904 on all the property above described owned by appellants, including the land proposed to be taken and that not taken. When they were produced and exhibited to counsel for appellee the witness was asked to state to the jury what the assessed valuation was upon which the taxes were extended. This was objected to by counsel for appellants, but the objection was overruled and the witness required to answer. This question, while not new in some other States, has not been directly passed upon, we believe, in this State. It was discussed by counsel in *Sanitary District* v. *Pittsburg, Ft. Wayne and Chicago Railway Co.* 216 Ill. 575, but the court held the question was not before it in that case. It was there said (p. 586) : "On the question whether a return for taxation is admissible in evidence as tending to show the value of property there is a conflict of authority and we do not express any opinion upon the subject, but they are not held, in any case, to be a criterion of value or conclusive. The returns did not purport to be made by the owner of the property and therefore had no force as admissions of value, and whether admissible in evidence or not, there was no error in giving the instruction to the effect that they were not conclusive."

Appellee seeks to justify the admission of the valuation for taxation on the claim that it was in the nature of an admission against the interest of the owners, and also because, the witness having testified to the gross income from the property, it was competent to show by the tax receipts the amount of taxes paid. If the proof had been limited to the amount of taxes paid on the property the question might not have been a serious one. But appellee did not stop there. It went further, and asked, and the court required the witness to state, what the assessed valuation was as shown by

the tax receipts.   It has been held that a schedule of the qual-
ity, quantity and value of personal property is competent
evidence against the owner on the question of value, but the
reason for such holding is based upon the fact that the owner
of personal property is required by law to list and place a
valuation on it.   There is no such requirement with reference
to real estate.   The assessor is required by the Revenue Code
to personally or by his deputy actually view, determine and
fix the valuation of real estate for taxation.   In no sense,
then, is the valuation for taxable purposes an admission by
the owner.   Such valuation is fixed by a public officer in no
way under the control of the owner of the land.   The as-
sessor himself might have been a competent witness, but his
statement of value as shown by a tax receipt was not com-
petent.   Both reason and the weight of authority are against
the competency of this evidence.   (*Dudley* v. *M. & N. W.
Ry. Co.* 77 Iowa, 412; *Brown* v. *Railroad Co.* 5 Gray, 40;
*Texas and St. Louis Railway Co.* v. *Eddy*, 42 Ark. 527; 10
Am. & Eng. Ency. of Law,—2d ed.—1154; Lewis on Emi-
nent Domain, sec. 448; Mills on Eminent Domain, sec. 172.)
That such evidence is of a character liable to have an im-
portant influence on the jury cannot be doubted.

We are also of opinion some of the rulings of the court
in the rejection of testimony offered by appellants were er-
roneous.   A considerable amount of testimony was offered
by the respective parties upon the question of whether the
property, or any of it, not taken was damaged.   Upon this
subject the evidence on opposite sides was directly conflict-
ing.   The evidence showed that the distance between appel-
lee's road and the store building next north of it, on lot 12,
which fronted Lowe avenue, was from two and a half to
three feet, and immediately north of that building were three
other stores, all fronting on Lowe avenue.   The proceeding
sought to take six feet off the south side of lot 12 and twenty-
two feet off the north side of lot 13, leaving six feet of said
lot 13 and all of lot 14 on the south side of the railroad, while

lots 10, 11 and twenty-two feet off the north side of lot 12 were on the north side of the track. Of the lots fronting east, 15 is south of the railroad, while six feet off the north side of 17 and all of lots 18 and 19 are north of it. Appellants' proof tended to show that these lots and those fronting north on Sixty-third street were damaged, while appellee's tended to show none of the property not taken was damaged. One of appellants' witnesses testified he had occupied the third store from the proposed railroad track on Lowe avenue to May, 1905, and moved away from it because he understood appellee was going to build its railroad through that locality. He was asked whether the construction and operation of the road would, in his judgment, affect the rental values of the stores. Objection by appellee to the witness answering the question was sustained. Another witness testified a firm he was connected with occupied the two stores next to the location of appellee's road for some time. They vacated one of them before they knew about the elevated railroad coming there and the other one after they learned it. They were paying $40 a month for the store until they moved out, May 1, 1905. He was asked, among other things, to what extent the building and operation of the elevated railroad would injure the rental value of the four stores fronting on Lowe avenue, but was not permitted by the court to answer. Another witness, who owned and occupied lots 7 and 8, which fronted on Sixty-third street and lay north of the lots fronting on Lowe avenue, and who was therefore familiar with the property, location and surroundings, and who also said he was familiar with the values of the property, testified he rented one of the Lowe avenue stores, about six weeks before the trial, for $15 per month that was worth $40 if the elevated road had not been located there. He was asked by appellants' counsel if the construction and operation of the road would affect the value of the property in the block, but upon appellee objecting he was not allowed to answer. Counsel for appellants then asked the

court if he would not be permitted to prove values by the witness, to which the court replied, "No." These witnesses should have been allowed to answer the questions. The reason given by the court for not allowing one of the witnesses to answer was, that he had moved away from the property before the road was built: The witness testified to his observation of the effect of an elevated road very near to a business house, and this is all the witnesses offered by the appellee could do. The testimony was very material and related to one of the most important questions in dispute. It is true, some witnesses testified fully as to their judgment and opinion on this subject, but the three we have mentioned appear to have been peculiarly qualified to testify on the subject, and it cannot be claimed that the refusal to permit them to answer the questions asked them worked no harm to the appellants.

For the reasons mentioned the judgment is reversed and the cause remanded.

*Reversed and remanded.*