(No. 34309.—

THE CITY OF CHICAGO, Appellee, *vs.* HARRISON-HALSTED BUILDING CORPORATION.—(HARRY I. ROBINSON, Appellant.)

*Opinion filed May 23, 1957.*

432

DEFREES, FISKE, O'BRIEN & THOMSON, of Chicago, (THOMAS J. JOHNSON, JR., and WILLIAM T. HART, of counsel,) for appellant.

JOHN C. MELANIPHY, Corporation Counsel, WILLIAM H. SEXTON, and FRANK S. RIGHEIMER, all of Chicago, (FRANK S. RIGHEIMER, JR., and THOMAS A. FORAN, of counsel,) for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This was an eminent domain proceeding brought in the superior court of Cook County by plaintiff to acquire from defendant Harry I. Robinson a tract designated as Parcel 26-54 as a part of its superhighway system. There being no traverse or motion to dismiss filed, the cause proceeded to trial before a jury on the question of the fair cash market value of the property as of the date of the filing of the petition. The jury fixed the just compensation at $19,000 and judgment was entered thereon for that amount. Contending that the damages awarded were inadequate and that error occurred on the trial which prejudiced his interests, defendant prosecutes this appeal.

There is, in general, no disagreement between the parties as to the physical condition of the property. It is a six-story and basement heavy mill type construction brick loft building, from 50 to 72 years old, located in close proximity to the downtown area of Chicago. The building occupies all of the lot, approximately 24½ feet by 103 feet, with a total floor area in excess of 17,500 feet. It is dry and unheated except for a small electric stove in an office in the front part of the first floor. There are no windows on the sides of the building and those in front and back give insufficient light so that artificial light must always

be used. A fire escape is located on the front. The exterior has not been painted for many years and is in need of extensive repairs, including tuckpointing, glazing and carpentry. There is no sprinkler system. The rear of the building is serviced by an elevator with a 2,000 pound capacity. Taylor Street in front of the building is 100 feet wide from curb to curb and there is a 15-foot-wide paved alley in the rear. The highest and best use of the property is warehousing of dry materials, for which it is used by defendant.

The defendant first contends that plaintiff's offer of $38,250 prior to the suit, constituted an admission by it of the value of the property. He urges that when an offer to purchase comes from a party to the suit, in addition to its being relevant as a type of probative evidence on the question of value, it is relevant and admissible as an admission by the party relating to value. The Eminent Domain Act provides for the taking of property where "the compensation to be paid * * * cannot be agreed upon by the parties interested." (Ill. Rev. Stat. 1955, chap. 47, par. 2.) It is a condition to the exercise of the right that the authorities seeking to appropriate the property shall first attempt to agree with the owner on the compensation and it is only upon failure to agree that a petition to condemn may be filed. (*City of Chicago* v. *Collin,* 302 Ill. 270; *Trustees of Schools* v. *Clippinger,* 404 Ill. 202.) Our condemnation statute provides that the condemnor must make an attempt to agree with the owner before instituting condemnation proceedings. An offer by the taker therefore is compulsory. A failure to agree with the landowner as to the compensation for the land was a condition precedent to the petition to condemn.

After failure to agree upon compensation the parties go into court, not as contracting parties but as antagonists. Each has a right, if he sees fit so to do, to stand on his legal rights and insist on his legal remedies and yield

nothing of either. So the parties stood at the trial of this case: plaintiff demanding the real estate and defendant insisting on just compensation for his land to be appropriated. Efforts to agree having failed, all previous negotiations or offers were at an end and their character and extent were not admissible. The proffered evidence of the condemnor's offer to buy was properly excluded.

On two occasions defendant sought to obtain information by pretrial discovery relative to the circumstances surrounding the amount and basis of the offer made by plaintiff. On advice of counsel for plaintiff, the three witnesses who had been subpoenaed by defendant in the discovery proceedings refused to answer the interrogatories. Thereafter the trial court heard extensive arguments on the propriety of the questions which had been asked them. Plaintiff contended that the appraisals of two of the witnesses were privileged documents, made by plaintiff in preparation for trial, and that since the amount and basis of plaintiff's offer would not be admitted in evidence at the trial, the witnesses need not answer interrogatories about them. Defendant urges that the inquiry should have been permitted as a preliminary to proof of the offer as an admission. The trial court sustained the plaintiff's position but did give leave to defendant to question the witnesses at the trial relative to their opinion of the fair cash market value of the property. This the defendant did not elect to do.

The defendant justifies his pretrial discovery efforts on the ground that the plaintiff's offer to purchase the property in question may not have included a premium for quick acquisition and therefore that the case of *City of Waukegan* v. *Stanczak,* 6 Ill.2d 594, is not determinative. It is his position that he was entitled to know what the appraisals of plaintiff's two witnesses contained so as to demonstrate that the offer did not include such a premium.

This position is without merit. In the *Stanczak case* we did not base our decision on the fact that an offer made

pursuant to the eminent domain statute often is made at a premium for quick acquisition and only if the offer contains a premium price for quick acquisition it is inadmissible. The rationale of that case was that offers so made are in the nature of an attempt to compromise and cannot be proved. Under the decision of the *Stanczak case,* the defendant had no right to the evidence sought by discovery and the trial court was correct in its ruling.

Irrespective of the holding in the *Stanczak case,* the defendant was not entitled to the information sought by the discovery proceedings. The undisputed evidence is that the appraisals were made by the two witnesses as experts in the real-estate field at the request of counsel for plaintiff for his use in the trial. This being true, the evidence was privileged and need not be disclosed either at time discovery is sought or at the trial.

It is next contended by defendant that the court erred in repeatedly interposing rulings adverse to the defendant when no objections were made by plaintiff. Thirteen such instances are cited as prejudicial. After a careful examination of the whole of the record upon these questions, we think it evident that the rulings complained of were caused largely by the persistency of counsel for defendant in trying to get improper evidence before the jury, which had theretofore been refused by the court, and by his comments upon the rejected evidence. It is apparent that the concern of the court was to keep the inquiry within the rules of evidence. We are satisfied that the rulings of the court were proper and did not prejudice the case of the defendant.

A total of four witnesses, two for plaintiff and two for defendant testified concerning values, damages and uses to which the property could be put. The testimony as to the highest and best use to which the property could be put was not in conflict but, as is common in condemnation cases, the witnesses' opinions as to value and damages varied over a wide range. We see no useful purpose in here setting

forth in detail the testimony of each witness. Testimony of the plaintiff's witnesses as to the value of the premises ranged from $13,000 to $17,500 while that of defendant's witnesses ranged from $28,000 to $29,500.

The jury's award for the land and building taken was the sum of $19,000. This was $1500 greater than the highest valuation placed thereon by plaintiff's witness and $9000 less than the lowest estimate of the defendant's witnesses. The verdict is well within the range of the testimony. It is a well established rule that where the jury has viewed the premises and the amount fixed is within the range of the evidence, the verdict of the jury will not be disturbed unless the record clearly shows it has been influenced by passion or prejudice or unless there was a clear and palpable mistake. (*Department of Public Works and Buildings* v. *Lambert,* 411 Ill. 183; *Illinois Iowa Power Co.* v. *Rhein,* 369 Ill. 584; *Forest Preserve District* v. *Dearlove,* 337 Ill. 555; *Jefferson Park District* v. *Sowinski,* 336 Ill. 390.) We cannot say that the amount of the verdict is clearly against the weight of the evidence or that the jury was influenced by passion or prejudice.

Defendant also assigns as error the trial court's refusal to admit evidence of an offer for the purchase of the premises involved before condemnation proceedings were instituted. Plaintiff in presenting its case introduced evidence without objection to the sale of the subject property for $13,000 and the sale of a comparable parcel of property in the immediate neighborhood. Whereupon defendant offered to prove that before the condemnation petition was filed he received an offer for the property of $33,000, to be paid one half in cash and the balance within 36 months in equal monthly installments with interest at the rate of five per cent per annum. The trial court in refusing the offered testimony and exhibits relied on the case of *Department of Public Works and Buildings* v. *Lambert,* 411 Ill. 183.

Because of the danger of confusing the issues and of the difficulty of limiting sales of other property to property similar in character and offers to *bona fide* offers, many courts have rejected evidence of actual sales of other lands in the neighborhood and evidence of recent offers that have been made for the land in question. This court has, however, adopted the rule admitting, in condemnation cases, evidence of voluntary sales of similar lands in the vicinity made at or about the time of the taking. (*Sanitary District of Chicago* v. *Boening,* 267 Ill. 118; *Peoria Gas Light and Coke Co.* v. *Peoria Terminal Railway Co.* 146 Ill. 372.) It has also permitted evidence of recent *bona fide* offers to purchase for cash by persons able to buy. *Department of Public Works* v. *Lambert,* 411 Ill. 183; *City of Chicago* v. *Lehmann,* 262 Ill. 468.

If an offer for the lands in question is to be received it must meet the tests of the rule established in the *Lambert* and *Lehmann* cases. The offer must be made in good faith, by a man of good judgment, acquainted with the value of the real estate and of sufficient ability to pay. It must be for cash and not for credit or in exchange and it must be determined whether made with reference to the fair cash market value of the property or to supply a particular need or fancy. Private offers can be multiplied to any extent, for the purpose of the cause, and the bad faith in which they were made would be difficult to prove. The reception of this kind of evidence stands upon an entirely different footing from evidence of actual sales between individuals or by public auction. The question of admission is one involving the discretion of the court and the decision of the court will not be disturbed unless it is manifestly against the weight of the evidence. The burden is upon the party seeking to have such evidence admitted to establish a sufficient foundation by showing that the offer was *bona fide,* for cash, and made by a person able to comply with the offer if it were accepted. The offer sought to be introduced

shows on its face that it was not for cash as required by the rule but for partly cash and the balance payable in monthly terms. The trial court did not abuse its discretion in excluding this evidence from the jury.

The defendant offered the assessor as a witness and in so doing stated the witness was offered to prove the assessed value of the property. The trial court ruled that evidence of the assessed value was not admissible. Defendant now contends that in view of the adverse ruling of the trial court on that question he did not call the assessor as a witness for "obviously the court barred any evidence of value from the assessor." It was not error to exclude from the jury the valuation of the real estate made by the assessor for the purpose of taxation. (*County of Mercer* v. *Wolff*, 237 Ill. 74; *Lewis* v. *Englewood Elevated Railroad Co.* 223 Ill. 223.) The determination of assessed value, being for a different purpose, is not a fair criterion of its fair cash market value. Both reason and weight of authority are against the competency of this evidence. Such evidence is of a character liable to have an important influence on the jury. The objection was not to the assessor as a witness but to his statement of value as shown by assessment rolls. Defendant might have offered him as he did other witnesses who gave their opinions but he did not do so. At no time did the trial court hold or suggest that it would not be proper for the defendant to produce the assessor as an opinion witness.

Defendant also complains that instructions numbered 5, 6, 7, 9 and 10 were offered by him and improperly refused by the court.

Instruction No. 5 refers to the diminishing or belittling of value by a witness. Upon the authority of *County of Jackson* v. *Wayman,* 369 Ill. 123, it was not error to refuse the instruction since it was not framed to authorize the jury to disregard both unjust exaggeration and unjust minimization.

Instruction No. 6 could have been given but it was not error to refuse it. A substantial part of the principles included therein were contained in other instructions given by the court.

Instruction No. 7 directed attention to the fact that the defendant would be forever barred from any future recovery. Justification for the tendered instruction was alleged to be found in the case of *Sanitary District of Chicago* v. *Baumbach,* 270 Ill. 128. It is a proper instruction where only a part of the property was being taken but it is not relevant here, since the whole of the property is being taken.

Instructions No. 9 and 10 permit the jury to consider special value which the owner might attach to his property but which would not be reflected in fair cash market value. The owner is entitled to a fair cash market value of the property for its highest and best use, including any special capabilities the property might have. But in determining fair cash market value, no account is to be given to values or necessities peculiar to the owner or to the condemnor. (29 C.J.S. 972; *Forest Preserve District of Cook County* v. *Hahn,* 341 Ill. 599; *West Chicago Park Commissioners* v. *Boal,* 232 Ill. 248; *City of Decatur* v. *Vaughan,* 233 Ill. 50.) An analysis of the four cases cited by defendant in support of his contention that these two instructions should have been given, (*Illinois Light and Power Co.* v. *Bedard,* 343 Ill. 618; *Ligare* v. *Chicago, Madison and Northern Railroad Co.* 166 Ill. 249; *Sanitary District of Chicago* v. *Loughran,* 160 Ill. 362; *West Chicago Street Railroad Co.* v. *City of Chicago,* 172 Ill. 198,) discloses two elements which distinguish them from the present case: (1) the reference of the court in those cases to special value is to a value which the property itself has because of a claimed special capability and not because of any value peculiar to the owner, and (2) in each of those cases the petitioner

and defendant had different theories as to the highest and best use of the property. The special value referred to is in the capabilities of the property and not in the operation of the owner. In the case at bar, all plaintiff's and defendant's witnesses agree as to its capabilities; namely, that its highest and best use was the use to which it was being put. We have considered all the instructions at length and believe the jury was fairly and fully instructed.

On the whole record we consider the case fairly tried, free of clear and palpable mistake, and the jury fully and properly informed by the evidence and adequately instructed regarding their verdict. The verdict was well within the range of the testimony and not the result of passion or prejudice.

The judgment of the superior court of Cook County is, therefore, affirmed.                    *Judgment affirmed.*