FRANK W. WANLESS, Plaintiff-Appellee, v. RHONDA ROTHBALLER *et al.*, Defendants-Appellants.

Third District   No. 3—84—0736

Opinion filed August 14, 1985.—Modified on denial of rehearing October 17, 1985.

Ross E. Morris, of Lewistown, for appellants.

Lyle W. Allen and Gary D. Nelson, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On December 29, 1977, plaintiff filed a complaint in the circuit court of Peoria County against defendants, Rhonda Rothballer and the Peoria Journal Star, Inc. (Journal Star), claiming defamation and seeking compensatory and punitive damages. On April 20, 1983, an amended complaint was filed. On April 2, 1984, after a trial by jury, judgments were entered in favor of plaintiff and against both defendants. Compensatory damages were fixed in the sum of $250,000 each. Punitive damages were awarded in the sums of $1,000 against Rothballer and $249,000 against the Journal Star. Defendants have appealed. We reverse.

The evidence showed that Rothballer was a reporter for the Journal Star and wrote three articles which were published by that newspaper in its January 20, 1977, edition. Plaintiff was the attorney for the village of Morton (village). The articles concerned plaintiff's conduct of his public office as such attorney and centered on his relationship with people who were affected by actions of the governing board of the village. We have no difficulty upholding the determination, inherent in the judgments, that at least some statements in the articles were false. However, we hold that the evidence was insufficient to support a determination that the articles were published with the "actual malice" required to make tortious a statement made about a public official. *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710.

█ In addition to contending that the proof of actual malice failed, defendants also contend that (1) plaintiff failed to prove the falsity of the defamatory statements, (2) the trial court erred in refusing to submit to the jury an interrogatory tendered by defendants, and (3) the court erred in instructing the jury. As we will explain, the evidence was sufficient to prove the falsity of certain statements made in the articles. Because of the disposition we make, we need not pass upon defendants' other contentions.

In its opinion in the seminal case of *New York Times*, the court held that for a statement critical of a public official to be actionable, the statement must be false and made "with knowledge that it was false or with reckless disregard of whether it was false or not." (376 U.S. 254, 280, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726.) Subsequent United States Supreme Court opinions have given at least as limited a definition of the mental state giving rise to actual malice. One opinion stated that the mental state of the publisher of the statement must be such that he "in fact entertained serious doubts as to the truth" of the statement. (*St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 20

L. Ed. 2d 262, 267, 88 S. Ct. 1323, 1325.) Another opinion stated the publisher must have a "high degree of awareness of *** probable falsity." (*Garrison v. Louisiana* (1964), 379 U.S. 64, 74, 13 L. Ed. 2d 125, 133, 85 S. Ct. 209, 216.) That opinion also indicated that ill will toward the public official by the one making the statement is insufficient to constitute actual malice. 379 U.S. 64, 74, 13 L. Ed. 2d 125, 132, 85 S. Ct. 209, 215.

The opinions in *New York Times* and in virtually all of its progeny have stated that the trier of fact can properly find actual malice only upon proof that is clear and convincing. The posture of the reviewing court is somewhat different than in other cases when passing on the sufficiency of the proof of actual malice. In *New York Times*, the court stated that a reviewing court is required to " 'make an independent examination of the whole record' " to make sure "that the judgment does not constitute a forbidden intrusion on the field of free expression." (376 U.S. 254, 285, 11 L. Ed. 2d 686, 709, 84 S. Ct. 710, 729.) The United States Supreme Court explained that doctrine in further detail in *Bose Corp. v. Consumer Union of United States, Inc.* (1984), 466 U.S. 485, 80 L. Ed. 2d 502, 104 S. Ct. 1949. The extent of the stricter scrutiny required is not easily articulated. However, apparently, the reviewing court should give the usual deference to the trier of fact's determination of underlying facts and the veracity and accuracy of witnesses but is to make a more independent determination, from the whole record, as to whether actual malice may be inferred from those underlying facts.

In *Bose Corp.*, the United States Supreme Court held that Federal Rule of Civil Procedure 52(a) (28 U.S.C. sec. 52(a) (1982)) should not be followed by a circuit court of appeals in reviewing the sufficiency of proof of actual malice in a defamation case. That rule directed a reviewing court not to set aside the findings of fact made in the trial court, unless the findings were "clearly erroneous" and also required deference to the credibility given by the trial court to the witnesses. We are not subject to Rule 52(a), but it is very similar to our usual rule in civil cases where by the determination of the trier of fact is not to be set aside unless it is contrary to the manifest weight of the evidence, *i.e.*, clearly wrong. (*Village of Wilsonville v. SCA Services, Inc.* (1981), 86 Ill. 2d 1, 426 N.E.2d 824.) The *Bose Corp.* court was applying first amendment principles to a defamation case. Its ruling is as applicable and binding on us as on Federal courts.

■ Problems of conflict of interest are inherent in the usual situation where an attorney in private practice is also a city or village attorney. The problems are intensified in a municipality of the size of

Morton. The newspaper articles in question criticized the manner in which plaintiff handled these problems. In doing so, the articles contained some falsifications, inaccuracies, and exaggerations which could have been avoided with the use of more care. In explaining why we deem the evidence insufficient to support a finding of actual malice, we examine the contents of the various articles and the surrounding circumstances.

One of the articles was headlined "VILLAGE ATTY. WANLESS PAID BY PRIVATE CLIENTS, TAXPAYERS." In its lead sentence, it stated that plaintiff "had been paid twice for preparing annexation papers—by the village and by clients wishing to annex to the village." This was not accurate. Actually, he had been paid by a few clients for preparing annexation papers which were then presented at meetings of the village board where he, acting in his capacity as village attorney, advised the board as to the sufficiency of the petitions. He also testified that he drafted one petition without charge for a person to whom he owed a favor. No evidence indicated that he charged the village anything for his time spent on this drafting. He did receive pay for examining the various annexation petitions that were presented to the board, and he was paid for being present at the meetings where the petitions were presented. Plaintiff testified that when annexation petitions which he had drafted were presented to the village board, he did not need to examine them after presentation. Thus, he did not make an additional charge for examining the petitions. He was paid, however, for attending the meetings where the petitions were presented and did give advice to the village as to whether the petitions were in proper order.

The situation involving a possible conflict of interest was generally described with accuracy. Plaintiff was being paid by the village and represented it in matters which involved petitions which he had drafted for persons who paid him a fee or for whom he prepared the petition as a return for a favor. An attorney-client relationship developed thereby. Plaintiff was paid both by the taxpayers and his private clients for his work in these proceedings. Rothballer and the Journal Star carelessly described the practice as one whereby plaintiff received the dual pay for preparation of petitions rather than for his total participation in the matter. Considering the strength of proof necessary to infer actual malice required by *New York Times* and cases following it, we deem the evidence insufficient to support a determination of actual malice. The evidence does not show a reckless disregard for truth nor a high degree of awareness that the statement was probably false.

Other portions of the foregoing article described a proceeding by the village to construct a sewer and to levy assessments to defray the costs. Among the properties to be affected by the sewer was the Waldheim subdivision, which was developed by WRCL Company, a corporation owned by various members of the Zobrist family, one of whom was a village trustee. The evidence showed that plaintiff had represented this family and, at the time involved in the article, was the registered agent for several corporations owned by them. A hearing was held by the board at which WRCL Company was not represented by plaintiff but by a Peoria law firm. Plaintiff represented the village during this proceeding. WRCL Company objected to the assessment, as did several others. The Waldheim subdivision was then undeveloped. An agreement was reached whereby the Waldheim subdivision would not be assessed, but tax receipts would be used in lieu of assessments from property owned by WRCL Company. Later, when lots were sold and attachments were made to the sewer, each lot owner would be required to pay to the village a sum equal to a *pro rata* share of what the assessment for the subdivision would have been plus interest.

In describing the background of the sewer project, the article stated:

> "At a public hearing in August 1975 for a special assessment sewer project on N. Morton Ave., where Waldheim is located, Wanless said he was the attorney for the subdivision's development company known as WRCL Co.
>
> So, he was representing Trustee Zobrist in his annexation request, as well as representing the village. He also was preparing the special assessment project that would affect his client, Zobrist, and future subdivision dwellers."

Plaintiff had prepared a petition for annexation of a portion of the Waldheim subdivision. Mr. Zobrist had properly abstained from voting on the matter.

The next four paragraphs of the article stated:

> "When that project was presented, Trustees Ferguson and Taylor voted against it because they claimed the Waldheim subdivision was receiving preferential treatment.
>
> Other subdivision developers had to pay to bring their pipeline to the village's trunk line. Solly E. Ackerman, developer of Hyde Park Subdivision north of Waldheim, bore that expense himself.
>
> With this plan, $20,000 in village tax funds were used to bring the auxiliary trunk line directly to the Waldheim subdivi-

sion. There was no cost to developer Zobrist, also a village trustee.

Once that line was furnished, the individual lots were assessed for the remainder of the sewer project costs. The entire sewer system for the subdivision was provided without any cost to WRCL Co."

The evidence indicated that no public hearing was held in August 1975. Plaintiff denied that he ever made a statement at any hearing concerning the sewer project that he represented WRCL Company, and no contrary evidence was presented. As stated, a Peoria law firm represented WRCL Company in regard to the sewer project. Rothballer could not remember how she obtained any information indicating that plaintiff had made the statement attributed to him concerning his representation of WRCL Company.

Plaintiff also indicates that he was defamed by the description of how the agreement for reimbursement in lieu of assessment was described in the article. It made no mention of the requirement that the lot owners repay the village upon purchase of the lot and attachment. In fairness, the reimbursement provision should have been described. However, the article was accurate in the sense that a sewer was brought to the Waldheim subdivision without any expense to the owners. That expense would, nevertheless, have been a charge on the lots sold and would have reduced the amount which the developer could obtain for the lots, but the developer would benefit by not being required to advance any money. Plaintiff argues that the sewer was not brought to the subdivision without charge to them, because lateral sewers had to be installed. The evidence does not bear this out. It indicated that the subdivision bordered on Morton Street, and that the sewer went down Morton Street. The lateral sewers merely made connection with the Morton Street sewer and carried sewer service throughout the subdivision.

As with the procedures concerning annexation, the article describes a troublesome problem of dual loyalties to which plaintiff was subject. There is no indication that Rothballer relied on suspicious sources in writing her articles. She produced some information about a delicate subject which was accurate. As with the situation concerning annexation, her analysis of the information which she had was careless and she tended to exaggerate. She did not say that plaintiff represented WRCL Company during the sewer project assessment procedures, and she did correctly set forth that plaintiff's position was one which presented problems. Although the question is a close one, we again deem the evidence insufficient to uphold a finding of

actual malice.

We have less difficulty with the allegations of defamation arising from the other two articles.

■ One of the other articles stated that plaintiff had earned more than the Peoria city attorney, and that plaintiff had provided the village board with only a "rough account" of the time he spent. The article suggested that itemization of his expenses would enable the board "to see how its funds are expended." The circuit court ruled that the jury should not base any recovery on the basis of the statement that plaintiff earned more than his Peoria counterpart, because that was true. Itemization of the time spent was significant, because plaintiff received pay on a per hour basis for any work over the 60 hours per month for which he was compensated by his retainer fee. The evidence indicated that plaintiff had given itemized time reports to trustee Lee Hinnen, who had the responsibility of reviewing bills for board approval. Hinnen testified that the itemized reports were available at the board meetings. Two trustees, members of a minority faction in dispute with the faction favorable to plaintiff, testified that they had never seen the itemized reports. Rothballer testified that she had not asked Hinnen or plaintiff anything about the reports. She testified that she had asked the village clerk for plaintiff's reports and had received only some very summary reports. The evidence indicated that plaintiff had made both summary and itemized reports. Rothballer also testified that she relied on the word of the two trustees who had told her that they had seen no comprehensive reports. As we will subsequently explain, defendants' failure to make further investigation falls short of indicating actual malice.

The thesis of the other article was that the value of land belonging to plaintiff's wife had increased because of a "Rezoning Law" which plaintiff had prepared. He had, in fact, prepared a rezoning ordinance which changed the zoning classification of property his wife had just purchased, but the jury could have concluded that the value of the property had not increased after the rezoning. Plaintiff testified that, in his opinion, there had been no increase. Evidence was also presented that the property was subsequently rezoned to its former classification. Plaintiff also maintains that evidence of a lowering of the assessed valuation of the property indicated that the actual value had not increased. We are not impressed with this argument, as assessed valuation of real estate is deemed to have little relevance to the property's actual value. (*City of Chicago v. Harrison-Halsted Building Corp.* (1957), 11 Ill. 2d 431, 439, 143 N.E.2d 40, 45.) Defendants presented the testimony of a real estate appraiser who

stated that, in his opinion, the value of the property had increased after the rezoning.

Rothballer testified that she had been told that the value of the property had been increased by (1) Ruth Ferguson, a trustee and member of the minority faction, (2) Rich Karnock, village superintendent of public works, and (3) Ralph Giancinti, whose property had been denied rezoning. She also testified that she felt that when the number of uses to which a tract of realty could be put is increased, the value of the property would inevitably increase. Plaintiff contends that Rothballer should have checked the assessment of the property and should have had an appraisal made of the property before writing the article. He also contends that she should not have relied upon the opinions of people who would be likely to be biased against him. While a more careful examination as to the value of the property might well have been made, her failure to do so falls far short of inferring actual malice on the part of Rothballer or of the Journal Star.

We also note that the value of property is a matter of opinion. It is doubtful that the statement of an opinion can be deemed to be a falsity. (*Gertz v. Welch* (1974), 418 U.S. 323, 339-40, 41 L. Ed. 2d 789, 805, 94 S. Ct. 2997, 3007.) In any event, the carelessness which gives rise to an inaccurate opinion is less susceptible to creating an inference of actual malice than carelessness that gives rise to an inaccurate statement of fact.

■■ Plaintiff contends that because defendants were publishing articles about a situation which had existed in the past rather than a "hot" news story, they had ample opportunity to make a full investigation and their failure to do so is a sufficient basis for actual malice. He cites *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975, which was decided after *New York Times*. There, recovery had been obtained for defamation arising from a magazine article charging that the football coach at the University of Georgia had given crucial information to the football coach at the rival University of Alabama enabling the latter school to win an important game between the schools' teams. A majority of the court considered that the conduct of the publisher was sufficiently improper to imply actual malice.

The plurality opinion and the concurrence of Chief Justice Warren noted that the publisher did have time to thoroughly investigate the subject matter of the story but chose to proceed almost entirely upon the affidavit of one person, who purported to have overheard a telephone conversation between the two coaches. The publisher had been made aware that the affiant had been convicted of a fraudulent check

offense. The writer of the story was not an expert on football and made no attempt to seek expert advice. Expert evidence at trial indicated that the information which the affiant's notes showed to have been exchanged was that which had been readily available from game films usually exchanged or was otherwise valueless.

The other four members of the *Butts* court considered the evidence insufficient to support a finding of malice. The plurality based their determination that the evidence of malice was sufficient on a theory that a lesser showing of malice than that required by *New York Times* was required there because the plaintiff, Butts, was only a public figure and not a public official. While the present rule may well be that public figures as well as public officials must meet the *New York Times* standard of proof to recover for defamation (see *Gertz v. Welch* (1974), 418 U.S. 323, 336, 41 L. Ed. 2d 789, 803, 94 S. Ct. 2997, 3005), the existence of that rule does nothing to enhance the precedential value of *Butts* to the facts of this case. Of those in *Butts* who held the evidence sufficient to show malice, only Chief Justice Warren applied the standard applicable here. Accordingly, we reject *Butts* as precedent.

In *St. Amant v. Thompson* (1968), 390 U.S. 727, 20 L. Ed. 2d 262, 88 S. Ct. 1323, a political candidate, in making a televised speech, accused a deputy sheriff of bribery and misfeasance in office entirely upon the basis of an affidavit of an individual of whose veracity the candidate was unaware. The United States Supreme Court held the evidence to fail to support a finding of actual malice. Giving due deference to the determination of the jury, we conclude that the conduct of defendants here was no more indicative of actual malice than that in *St. Amant*.

For the reasons stated, we hold that the proof of actual malice on the part of defendants here did not support the verdict. We reverse the judgments entered on the verdict.

Reversed.

WEBBER and MORTHLAND, JJ., concur.