*In re* ESTATE OF MAE EMMA HUFFMON, Deceased (The Department of Public Aid, Petitioner-Appellant, v. Clara Vaughan Dorris, Respondent-Appellee).

Fourth District   No. 4—93—1028

Argued May 17, 1994.—Opinion filed June 29, 1994.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Karen Konieczny, Special Assistant Attorney General (argued), of counsel), for appellant.

Carl J. Sinder (argued), of Engert & Sinder Law Offices, of Champaign, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On October 25, 1993, the circuit court granted respondent's motion for a directed finding in her favor, dismissing the petition of the Illinois Department of Public Aid (Department) to rescind an *inter vivos* transfer of real property alleging it was fraudulent as to the Department. The Department appeals. We reverse and remand.

Mae Emma Huffmon applied for and received direct medical payments from the Department beginning in September 1989. When

she applied for aid, Huffmon owned a home at 309 E. Church in Champaign, Illinois. In her application for assistance she valued this home at $10,000. At the time of her application, the Department was not concerned with the value of the home because it was exempt from consideration for eligibility issues as it was a homestead.

In February 1990, Huffmon began living in a nursing home; at this time she still owned the property. When Huffmon moved into the nursing home, respondent Clara Vaughan Dorris, Huffmon's granddaughter, began paying the expenses and taxes on the home.

In a deed dated December 2, 1991, Huffmon conveyed the home to Dorris. The consideration stated in the deed was "one dollar ($1.00) and other good and valuable consideration in hand paid." From December 1991 until Huffmon's death in April 1992, Dorris continued to pay the expenses on the home. Dorris did not live in the home until after Huffmon's death in July 1992.

The Department filed a petition to rescind the conveyance of the home to respondent Dorris, alleging the conveyance was fraudulent.

At the hearing on the petition, respondent objected to testimony concerning the assessed value of the home and the admission into evidence of computer printouts of payments made on behalf of Huffmon. At the close of petitioner's evidence, respondent moved for a directed finding in her favor. Before the court ruled on respondent's motion, petitioner was allowed to reopen its case and call Dorris to testify.

Dorris testified that she paid, in addition to the $1 consideration on the face of the deed, the expenses related to the home from February 1990 until Huffmon's death, and she promised Huffmon to pay her funeral expenses.

After hearing the testimony of Dorris and considering the arguments of counsel, the trial court found that the Department failed to show a *prima facie* case of a fraudulent transfer. The court specifically found the value of the home was between $18,000 and $20,000, and the consideration actually paid for the home (the payment of expenses, improvements and funeral expenses) did approximate the fair, cash market value of the home. There was no testimony or other evidence concerning the actual amounts paid by respondent for these expenses.

On September 30, 1993, the Department filed a motion to reconsider, arguing that under section 3—11 of the Illinois Public Aid Code (Code) (305 ILCS 5/3—11(4) (West 1992)), all it had to show for a *prima facie* case of fraudulent transfer was "the consideration for the deed *** does not approximate the fair, cash market value." The court found that the Department had the burden of proving the

consideration was inadequate and failed to do so; the court denied the motion to reconsider.

●1 The petition to rescind the transfer of the real property was brought pursuant to section 3—11 of the Code, which states in part:

> "A transfer of any legal or equitable interest in real property, whether vested, contingent, or inchoate, by a person who is or has been a recipient, *** shall, under any of the following conditions, be deemed prima facie fraudulent as to the Illinois Department.
>
> * * *
>
> (4.) When the consideration for the deed or assignment, even though recorded or registered, does not approximate the fair, cash market value." (305 ILCS 5/3—11 (West 1992).)

The Department argues the proper standard is not whether the consideration is nominal or illusory, but whether it approximates the actual fair, cash market value of the home. We agree. The circuit court found, however, that the evidence did "not show that the consideration [did] not approximate the fair cash market value. It might well have been equal to or more than the $18,000 to $20,000, based on the record." It is apparent that while the circuit court commented that the actual consideration paid was not illusory, the court's ruling was based on its finding that the payments *approximated* the value of the property.

In construing a statute, the primary goal is to ascertain the legislative intent. To find this intent a court is to assume the words used in the statute have their ordinary and popularly understood meanings. In addition, consideration is also to be given to the objective of the statute. (*Opyt's Amoco, Inc. v. Village of South Holland* (1992), 149 Ill. 2d 265, 277, 595 N.E.2d 1060, 1066.) The statute states a *prima facie* case is shown if the consideration on the deed does not approximate the value of the property.

The legislation allows the Department to bring suits such as this without requiring it to search for the consideration actually paid. All petitioner must show is the consideration, as shown on the face of the deed, does not approximate the fair, cash market value of the property. When determining the value of the stated consideration, vague statements which do not indicate the value of the consideration, such as "and other good and valuable consideration," need not be addressed by the Department in its case in chief.

●2 When the Department proceeds under section 3—11 of the Code, a recitation of "good and valuable consideration" or other vague statement which gives no indication of the actual value of what is exchanged is not sufficient to defeat a *prima facie* showing of fraud. The property in this case was valued at $18,000 to $20,000; the

recitation of $1 consideration does not approximate the fair, cash market value of the property.

Section 2—1110 of the Code of Civil Procedure (735 ILCS 5/2—1110 (West 1992)) governs the use of directed findings in cases tried before the court, stating:

> "In all cases tried without a jury, defendant may, at the close of plaintiff's case, move for a finding or judgment in his or her favor. In ruling on the motion the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence."

This section requires the court to engage in a two-part test when ruling on a motion for a directed finding. The circuit court must first determine as a matter of law whether the petitioner has made a *prima facie* case. If it has not, the court should dismiss the action. If, however, the court finds petitioner has presented a *prima facie* case, the circuit court, as the finder of fact, must weigh the evidence petitioner has presented. This weighing process may negate some the required elements of petitioner's case. If the court finds an element has been negated, the court should grant respondent's motion for a directed finding. *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 155, 407 N.E.2d 43, 45.

It is clear the legislature intended to shift the burden of presenting evidence of the value of what was actually paid as consideration to the respondent. Once the Department presented evidence that the only quantitative consideration recited on the face of the deed did not approximate the value of the property, the burden of going forward with further evidence concerning the actual consideration paid shifted to Dorris.

This, however, is not what occurred. Prior to any ruling by the trial court on the motion for a directed finding, the Department, as part of its case in chief, called Dorris as an adverse witness. On cross-examination she testified that in addition to the $1 consideration recited in the deed, she also promised to pay the expenses of keeping the home in the hopes Huffmon would return as well as Huffmon's funeral expenses. This testimony did not give the actual values paid by Dorris, any amounts she expected to pay, or any estimation of the value of these payments.

This court will not reverse the trial court's determination of a question of fact unless it is against the manifest weight of the evidence. (*Kokinis*, 81 Ill. 2d at 154, 407 N.E.2d at 45.) In this case, the trial court found the consideration actually paid by Dorris approximated the value of the property. The record, however, is void of any evidence concerning the value of the payments made by Dorris and

the court's determination that they approximated the value of the property is not supported by any evidence in the record.

As stated heretofore, the Department made a *prima facie* showing of fraud under section 3—11 of the Code. Albeit the Department called Dorris as a witness, her testimony, given at that time, was not sufficient to grant a directed finding.

●3 Dorris claims the circuit court made certain evidentiary errors. These include improperly allowing testimony from Marie Gambach and Brian Christie concerning the value of the home, where the valuations were allegedly based on its assessed valuation. Gambach, a property consultant for the Department, testified that the property was valued at $24,060; this value was arrived at by multiplying the tax assessment of $8,020 by three. Christie valued the property at $18,000 to $20,000; this value was his opinion based upon allegedly comparable sales.

In *City of Chicago v. Harrison-Halsted Building Corp.* (1957), 11 Ill. 2d 431, 143 N.E.2d 40, the supreme court found it was proper for a trial court to exclude evidence of property value based on tax assessments. The court further found "[t]he determination of assessed value, being for a different purpose, is not a fair criterion of its fair cash market value." *City of Chicago*, 11 Ill. 2d at 439, 143 N.E.2d at 45.

Dorris is correct that the testimony of Gambach should not have been admitted. Her valuation of the property is based solely on the tax assessment. However, the circuit court did not appear to give any weight to that testimony. The circuit court found the value of the home to be $18,000 to $20,000, the figure offered by Christie, not the $24,060 testified to by Gambach. Therefore, any error was harmless.

The testimony of Christie concerning the value of the property was properly admitted. Christie gave his *opinion* as to the value of the property based on three comparable sales. While the information concerning these comparable sales was found in the assessor's office, the valuation was based on the *sales* of the property, not the assessment of their value for tax purposes. In *City of Chicago*, the court noted that objections such as this are not to the witness but to the statements of value as shown on the assessment rolls. In that case the defendant "might have offered [the assessor] as he did other witnesses who gave their opinions." (*City of Chicago*, 11 Ill. 2d at 439, 143 N.E.2d at 45.) The testimony of Christie, who gave his opinion of the value of the property and which was the testimony relied upon by the circuit court, was properly admitted.

●4 Respondent's concern about Christie's failure to personally observe the comparable properties or this property would not go to

the admissibility of the testimony, but to its weight. It is within the discretion of the court to determine what an expert may rely upon. *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.* (1993), 250 Ill. App. 3d 665, 679, 619 N.E.2d 1321, 1330.

●5 Respondent's final argument is that the documents which show that Huffmon received medical payments from the Department were improperly admitted because they were documents prepared in anticipation of litigation. To show Huffmon received medical payments from the Department prior to her death, petitioner offered two exhibits. The first was a computer printout showing the medical expenses paid by the Department on Huffmon's behalf, with a certification by the Director of the Department that the printouts were the records of the Department. The second exhibit was also a computer printout of the payments; however, this exhibit does not contain the Director's certification. At hearing, respondent objected to these exhibits.

This argument is without merit. In *In re Estate of Zander* (1993), 242 Ill. App. 3d 774, 611 N.E.2d 86, this court addressed the same issue. In *Zander*, the estate argued that similar printouts were hearsay and, therefore, inadmissible. The court found the printouts, which are certified by the Director and are the complete file on the decedent, were not prepared in anticipation of litigation. This finding is based on section 10—13.4 of the Code (305 ILCS 5/10—13.4 (West 1992)), which states:

> "The books, papers, records and memoranda of the Illinois Department *** may be proved in any hearing, investigation, or legal proceeding by a photostatic or other copy thereof under certificate of the Director of the Illinois Department. Such certified copy shall, without further proof, be admitted into evidence in the hearing before the Illinois Department or in any other legal proceeding."

This section has been applied to computer printouts of medical payments made on behalf of a decedent by the Department. (*Zander*, 242 Ill. App. 3d at 778-79, 611 N.E.2d at 89; *Connor v. Shaw* (1985), 138 Ill. App. 3d 429, 433, 485 N.E.2d 1184, 1187.) The document presented by the Department containing the certification of the Director was clearly admissible. The document which did not contain the certification may have been inadmissible. However, the information contained in the admissible exhibit showed certain payments were made and therefore would have made petitioner's *prima facie* case. The amount of the payments made by the Department would be important for the determination of the *value* of any lien, not the *validity* of the transfer of the property.

For the foregoing reasons, the judgment of the circuit court of Champaign County granting a directed finding is reversed and remanded for further proceedings.

Reversed and remanded with directions.

LUND and STEIGMANN, JJ., concur.