THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Plaintiff-Appellee, *v.* SUN OIL COMPANY *et al.*, Defendants-Appellants.

Fifth District   No. 77-488

Opinion filed October 17, 1978.

Kassly, Bone, Becker & Carlson, P. C., of Belleville (Stephen M. Tillery, of counsel), for appellants Kenneth J. Johnson, Mary L. Johnson, Clayton L. Johnson, and Mary Maxine Johnson.

William J. Scott, Attorney General, of Springfield (Ben S. Urban, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE KUNCE delivered the opinion of the court:

Kenneth J. Johnson, Mary Johnson, Clayton Johnson and Maxine Johnson appeal from a judgment entered on a jury verdict for $28,500 in

compensation for the taking of 1.07 acres and zero damages to the remainder, 1.93 acres.

The defendants contend that they were denied a fair trial: (1) by the State's violation of the court's order *in limine* to refrain from referring to Kenneth Johnson's letter of negotiation sent to the State until further order of the court; (2) by the State commenting in closing argument that the jurors, as taxpayers, would ultimately pay the judgment; and (3) by the court giving Illinois Pattern Instructions, Civil, No. 300.70 (2d ed. 1971) (hereinafter IPI), "Instruction on Verdict Forms and Forms of Verdict—Just Compensation—Facts of Damages to Remainder—Single Tract." In the alternative, defendants argue that if any one of the foregoing errors is not sufficient, in and of itself, then the cumulative effect of the errors deprived defendants of a fair trial.

The singular aspect of this case is that, not only are Kenneth Johnson and Clayton Johnson owners of the property, but they are recognized as, and were qualified at trial as, experts in the evaluation of property located in the vicinity of interchanges on the Interstate Highway System in Southern Illinois, and particularly in St. Clair County. Defendants, as beneficiaries of an Illinois land trust, were the owners of three acres at the junction of the Illinois Route 161 and Interstate 64 in St. Clair County, Illinois. At that point, Illinois Route 161 runs in an east-west direction and I-64 runs in a northwesterly direction. On January 8, 1971, the State filed a condemnation petition for 1.07 acres of defendants' three acres, and on January 20, 1971, the court granted petitioner's motion for immediate vesting of title filed pursuant to the "quick take" provisions of the Eminent Domain Act (Ill. Rev. Stat. 1969, ch. 47, par. 1 *et seq*). The defendants filed a cross-petition for damages to the remaining 1.93 acres. Prior to the filing of the State's petition for condemnation, Kenneth and Clayton Johnson, by letter, rejected the State's offer of $11,770 for the 1.07-acre tract. In the same letter, the Johnsons made a counteroffer to sell said tract to the State for $32,000. The counteroffer was made with the provision that the counteroffer would not preclude the Johnsons from seeking a higher value for their land if condemnation proceedings were instituted. This letter will be hereinafter referred to as the letter of negotiations.

Prior to trial, defendants filed a written motion *in limine* requesting an order limiting petitioner in its opening statement and the introduction of "evidence from any direct, or indirect, reference to any oral or written offers, counter-offers or aspects of negotiations between the parties." Prior to the introduction of evidence, a hearing was held on the motion *in limine*. Defendants contended that the letter was an offer of negotiation and, therefore, inadmissible. Petitioner contended that the letter could be

used as impeachment as a prior inconsistent statement if Kenneth and/or Clayton Johnson testified to a higher evaluation for the property, *i.e.*, at trial the property was worth a certain amount of money in excess of $32,000. However, if the Johnsons stated that they would accept a certain amount of money for the property, that was a subject of negotiation and, hence, inadmissible. The court ruled that before petitioner attempted to offer any evidence of prior negotiations, an offer of proof would be made outside the presence of the jury. The court would then make a ruling on the admissibility of the evidence.

Kenneth Johnson testified that the highest and best use for the entire tract before taking was highway commercial, which includes gas stations, motels, and fast-food businesses. Mr. Johnson was of the opinion that the value of the entire tract before taking was $110,000 and that the value of the 1.07 acres taken by the State was $40,000. He was also of the opinion that the value of the remaining 1.93 acres prior to taking was $70,000 and that after the taking, due to the loss of direct accessibility to Illinois Route 161 the value was only $25,000; therefore, the damage to the remainder was $45,000. On cross-examination, Mr. Johnson was asked whether he had ever placed a different value on the entire property, and he responded that the entire tract was bought by the defendant for $32,500. The State then asked whether he ever placed a value of $32,000 on the property which was taken and $33,000 on the whole tract. After a prompt objection by defense counsel, an offer of proof was held *in chambers*. The State argues that its questions were for purposes of establishing a foundation and that the order *in limine* was not violated as no attempt had been made to introduce the letter. After hearing a lengthy argument by counsel, the court ruled that the negotiation letter was inadmissible for impeachment purposes as it would be opening the door to the negotiations between the parties. After returning to the courtroom, the court ordered the last question and answer stricken and admonished the jury to disregard same. The court was asked to order the record to reflect that when petitioner's counsel cross-examined Kenneth Johnson, counsel held the letter high enough in his hand that the letter was visible to all members of the jury. The issue was again raised in defendant's post-trial motion. The court denied the post-trial motions and stated in his written opinion that the court was satisfied that no evidence was presented to the jury that there had been any prior negotiations between the parties and that because Clayton and Kenneth Johnson took the stand as experts as well as property owners, it was not improper to challenge the basis of their expert evaluation.

A motion *in limine* is a pretrial motion which seeks an order excluding certain evidence, on the ground that its admission would violate some ordinary rule of evidence. In this case as in other condemnation cases,

after efforts to agree have failed, all previous negotiations or offers were at an end and their character and extent are not admissible. (*City of Chicago v. Harrison-Halsted Building Corp.* (1957), 11 Ill. 2d 431, 143 N.E.2d 40.) The advantage of a motion *in limine* is that it allows a party to obtain an order excluding inadmissible evidence without having to object to, and thereby emphasize, the evidence before the jury. Use of such a motion thus enables a party to prevent his opponent beforehand from attempting to prejudice the jury by offering evidence which the opponent knows should be excluded or stricken upon objections. (*Department of Public Works & Buildings v. Roehrig* (5th Dist. 1976), 45 Ill. App. 3d 189, 359 N.E.2d 752.) In the case at bar, defendant contends that he was merely establishing a foundation for impeachment and did not violate the order *in limine.* After Kenneth Johnson testified that the property was bought for $32,500, the State should have requested an *in chambers* conference on whether the letter of negotiation could be introduced into evidence if a foundation was established and on what questions, if any, could be asked to establish that foundation. During conference in chambers, defendant's counsel asked the court to have the record indicate that at the time Mr. Johnson was asked if he had ever valued the property at $32,000, the State's counsel was holding the letter aloft in plain view of the jurors, inferring that he had documentation in his hand about which he was questioning the witness. Although the court did not have the record so reflect, he allowed the letter to become part of the record. Counsel for the State did not deny at trial and did not deny at oral argument that his actions, as described by the defense counsel, were incorrect. We also find important that in the settlement letter, Mr. Johnson made a counteroffer of $32,000 for the 1.07 acres actually taken while the State's counsel's question and action implied that an evaluation of the whole three-acre tract for $33,000 had been made by Mr. Johnson.

■■ The foregoing issue was preserved in defendants' post-trial motion. In the court's denial of said post-trial motion, he ruled that no evidence of the prior negotiations had been presented to the jury and that no error occurred. We give great weight to the findings of the trial court as he was in a superior position to observe the progress of trial and observe the reaction of the jury. However, we find that the State's violation of the order was not cured and the prejudice removed by the trial court's ruling and admonition to the jury to disregard the question and response made by the witness. Such settlement offers in condemnation proceedings are inadmissible at trial. (*City of Waukegan v. Stanczak* (1955), 6 Ill. 2d 594, 129 N.E.2d 751; *City of Chicago v. Hamlin* (1962), 24 Ill. 2d 148, 18 N.E.2d 473.) It is most difficult to determine what effect such conduct and error had on the minds of the jurors. On ruling on the post-trial motion, the trial court considered only the effect of each error and not their

cumulative effect. When we consider this error together with those subsequently set out, the harm can be rectified only by a new trial.

■■ ■ During closing argument, the State stated: "[I] agree that they [defendants] ought to make a profit, but should it really be at the taxpayers' expense to give them a big profit; after all, really, you know who pays for this stuff? You and I." A prompt objection to that remark was sustained by the trial court. On appeal, counsel concedes that his comment was error but contends that the error was harmless. Counsel reasons that jurors are chosen from jury lists and if these people are interested enough in the political process to become eligible to vote, then the jurors are sophisticated enough to know that the jury's award of damages would be paid by taxpayers' money without having to be told. We find counsel's argument without authority. While subconsciously the jurors may have had such an undisclosed prejudice, the argument of counsel had the effect of making them conscious of their personal interest in the determination of the amount of compensation and rendering their passive prejudice active. (*Denver Joint Stock Land Bank v. Board of County Commissioners* (1940), 105 Colo. 366, 98 P.2d 283.) The primary objective of condemnation proceedings is to satisfy the constitutional guaranty of just compensation and damages to the owner of private property taken for public use. (Ill. Const. 1970, art. 1, §15.) Although we have found no Illinois cases squarely on point, *Department of Public Works & Buildings v. Keck* (1928), 330 Ill. 39, 161 N.E. 55, and *St. Clair Housing Authority v. Quirin* (1942), 379 Ill. 52, 39 N.E.2d 363, would indicate that prejudicial error occurred due to the State's comment. In *Department of Public Works & Buildings v. Keck,* our supreme court ruled that the trial court properly rejected a proposed jury instruction that the property to be taken was to be paid for by the State rather than the county or town. Our supreme court reasoned that the question of who is to pay the damages is irrelevant and not a proposition of law. In *St. Clair County Housing Authority v. Quirin,* our supreme court ruled that during voir dire examination, it was improper to question prospective jurors on whether their verdict would be influenced if the United States was paying for the property rather than a local unit of government. Our supreme court ruled that the questions were asked as an invitation to be liberal with the money of the Federal Government and to condone such conduct would allow immaterial and prejudicial matter before the jury. Other States which have considered this issue have found the remarks of counsel improper and have remanded for a new trial on the basis that such remarks are prejudicial and an appeal to the jurors' self-interest. (*Denver Joint Stock Land Bank v. Board of County Commissioners* (1940), 105 Colo. 366, 98 P.2d 283; *State ex rel. Department of Highways v. Collins*

(Okla. 1971), 482 P.2d 583; *West v. State* (Tex. Civ. App. 1941), 150 S.W.2d 363; *Doty v. City of Jacksonville* (1932), 106 Fla. 1, 142 So. 599.) Although the trial court in the case at bar thought the defendants' timely objection to the remark and the court sustaining the objection cured the error, we believe that this error when viewed in light of other errors in the record deprived the defendants of a fair trial.

■■ Defendants also contend that they were prejudiced by the State's characterization of Kenneth Johnson and Clayton Johnson as land speculators in closing argument and during cross-examination of these two witnesses. The petitioner contends that defendants opened the door for such characterization when they testified to the numerous real estate transactions in which they have been involved. The Johnsons characterized themselves as land investors. We are not unmindful of the undesirable connotation the term "speculator" has as contrasted to "land investor." References to "land speculator" should be avoided upon a retrial of this case. *Department of Transportation v. Newmark* (5th Dist. 1975), 34 Ill. App. 3d 811, 341 N.E.2d 133.

Lastly, defendants contend, relying on *Department of Public Works v. Wilson & Co.* (1975), 62 Ill. 2d 131, 340 N.E.2d 12, that the court improperly instructed the jury on IPI Civil No. 300.70 "Instruction on Verdict Forms and Forms of Verdict—Just Compensation—Fact of Damages to Remainder Contested—Single Tract." Although this issue is not dispositive of the appeal, we comment on it as the issue may arise on the retrial of this case. The defendants lost all access from their remainder to Illinois 161 and presented evidence that their remainder had been, therefore, substantially damaged. The State presented evidence that the remainder was not damaged. Defendants contend that since *Department of Public Works v. Wilson & Co.*, the law is that when a frontage road is substituted for direct access to a highway, the court must initially determine whether damages have occurred to the remainder. If the court determines that there has been damage to the remainder, then the jury determines the extent of the damage; the jury no longer determines whether damage has, in fact, occurred to the remainder. Assuming, *arguendo*, that appellants' contention is correct, then the following jury instructions, which were given in this case, also would not state the law: IPI Civil No. 300.11, "Issues Made by Petition and Cross Petition—Fee Interest Taken—Fact of Damage to Remainder Contested"; IPI Civil No. 300.31, "Burden of Proof—Fee Interest Taken—Fact of Damages to Remainder Contested"; and IPI—Civil No. 300.45 "Measure of Damages to Remainder—Fee Taken—Fact of Damage to Remainder Contested."

The sole issue before our supreme court in *Department of Public Works v. Wilson & Co.* was whether the trial court erred in denying the

State's motion *in limine* and permitting proof concerning damages to the land not taken as a result of the loss of direct access to Roosevelt Road. The facts in *Wilson* differed substantially from the case before us. There the appellee owned a 5.24-acre tract with a 151.2 feet frontage on Roosevelt Road. The State condemned .55 acre of appellee's land which eliminated any direct access to Roosevelt Road. In lieu of that direct access, the Department proposed to construct a 26-foot-wide, paved frontage road over the .55 acre taken. A chain link fence would be constructed between the frontage road and Roosevelt Road to prevent any passage between the two. The State's motion *in limine* prayed for an order prohibiting witnesses for appellee from considering as an element of their damages, loss of access or change in highest and best use because of the placing of the defendant's property on a frontage road as such action by the State is noncompensable as a matter of law. Our supreme court ruled that the court's denial of the motion was proper.

The *Wilson* court analyzed numerous cases in which it had been held that not every limitation of access is compensable. Such cases include: the closing of a street in a block other than in which one's property is situated where his free access is not impaired even though the closing of the street in the other block may result in inconvenience and circuity of travel (*City of Chicago v. Union Building Association* (1882), 102 Ill. 379; *City of East St. Louis v. O'Flynn* (1887), 119 Ill. 200, 10 N.E. 395; *Guttery v. Glenn* (1903), 201 Ill. 275, 66 N.E. 305); the changing of the flow of traffic along the street which abuts the landowner's premises so long as the property owner's right of access is not materially impaired (*Department of Public Works & Buildings v. Mabee* (1961), 22 Ill. 2d 202, 174 N.E.2d 801; *City of Chicago v. Spoor* (1901), 190 Ill. 340, 60 N.E. 540; *Hohmann v. City of Chicago* (1892), 140 Ill. 226, 29 N.E. 671); restricting types of vehicles which may use an abutting highway (*Illinois Malleable Iron Co. v. Commissioners of Lincoln Park* (1914), 263 Ill. 446, 105 N.E. 336). In the foregoing type cases, it is for the court to determine in the first instance whether there has been an actionable taking of the property owner's right of access or the material impairment of access which entitles the property owner to compensation.

The *Wilson* court then applied the loss of access to the facts of the case presented to them. The State argued that the construction of the frontage road was a traffic control device of the same character as median dividers which do not limit access; therefore, as a matter of law there were no damages. Appellee argued that the loss of access to Roosevelt Road would impair the highest and best use of his property. The supreme court ruled that when the trial court is presented with the issue of whether as a matter of law the limitation of access is due to traffic control pursuant

to the State's police power or whether there is a factual issue of impairment of the right of access which may be compensable, depending on the decision of the trier of fact, the jury or the court, as the case may be, the court initially determines whether as a matter of law the limitation of access is due to the State's police power to control traffic, then no evidence of damage to the remainder due to the exercise of that police power can be presented to the jury. If the trial court determines that a material impairment of the right of access is not due to the police power to control the movement of traffic, the evidence may be presented by the landowner on the issue of damages that the impairment of the right of access has on the remainder. The jury then determines the extent of damage to the remainder, if any. *City of Chicago v. Provus* (1953), 415 Ill. 618, 114 N.E.2d 793; *Guyer v. Davenport Rock Island & Northwestern Ry. Co.* (1902), 196 Ill. 370, 63 N.E. 732.

Appellants argue that the *Wilson* decision, which solely involved a ruling on a motion *in limine*, held that when a frontage road is substituted for direct access, the trial court must determine whether damage to the remainder has in fact occurred. To so hold would take a factual issue which heretofore has been for the jury and attempt to raise it to a matter of law. *Wilson* does not so hold. (See the jury instructions in *City of Chicago v. Provus* (1953), 415 Ill. 618, 114 N.E.2d 793; *Guyer v. Davenport Rock Island & Northwestern Ry. Co.* (1902), 196 Ill. 370, 63 N.E. 732; *Kierman v. Chicago, Santa Fe & California Ry. Co.* (1887), 123 Ill. 188, 14 N.E. 18.) For the reasons stated above, we find the jury was properly instructed in this case.

The judgment of Circuit Court of St. Clair County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

EBERSPACHER, P. J., and G. J. MORAN, J., concur.