PROCEDURAL HISTORY
Maranda Ann Whittley, a minor, by Diane Whittley Walters, her mother, filed a complaint against The City of Meridian, Taylor Properties, Ltd., Bill Gordon, doing business as Bill Gordon Enterprises, (hereinafter Gordon) Payson Casters and Leach Company for personal injuries sustained by Maranda when a refuse bin fell on top of her.
In the Circuit Court of Lauderdale County, The Leach Company, the manufacturer of the garbage trucks used by the City of Meridian was dismissed via summary judgment. Taylor Properties, Ltd., owner of the apartment complex where the refuse bin causing the injury was situated and the owner of the refuse bin itself, settled with the appellant for $2,519,276.00 to be paid over a period of time via structured settlement plus an additional $2,706.00 for each month the appellant shall live beyond December 15, 2013. Payson Casters, Inc., maker of the wheels on the refuse bin, settled with appellant for $25,000.00. During the actual trial of the case, after all parties had rested, Gordon, the manufacturer and seller of the refuse bin, was granted a directed verdict and dismissed. The jury returned a verdict in favor of the City of Meridian. From this verdict, the appellant appeals the dismissal of Bill Gordon and the verdict in favor of the City of Meridian, assigning as errors the following:
 I. THE TRIAL COURT ERRED BY GRANTING THE CITY OF MERIDIAN'S MOTION IN LIMINE WHICH EXCLUDED ALL EVIDENCE OF NOTICE ON BEHALF OF THE CITY FROM THE CONSUMER PRODUCT SAFETY COMMISSION THAT THE TYPE OF REFUSE BIN IN QUESTION WAS DANGEROUS.
 II. THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION FOR A NEW TRIAL OR IN THE ALTERNATIVE, JUDGMENT NOTWITHSTANDING THE VERDICT.
 III. THE TRIAL COURT ERRED IN GRANTING INSTRUCTION NUMBERS D-1-131A AND D-1-SA. *Page 1343 
 IV. THE TRIAL COURT ERRED IN GRANTING A PEREMPTORY INSTRUCTION FOR BILL GORDON, D/B/A BILL GORDON ENTERPRISES.
We reverse and remand for a new trial based upon assignments of error I, III and IV. Therefore, we do not address assignment II.
 STATEMENT OF FACTS
On June 1, 1981, a side-slanted refuse bin fell on Maranda, a four year old, while she and a friend were playing on or near it. Maranda suffered broken ribs, a broken collar bone, a broken neck and a severed spinal cord. Maranda is now a quadriplegic.
The refuse bin, owned by Taylor Properties, Ltd. and situated at the Marion Park Apartment complex, was designed to enable the garbage trucks used by the City of Meridian to pick up the bin, empty it into the truck and replace the bin on the ground.
DID THE TRIAL COURT ERR IN GRANTING THE CITY OF MERIDIAN'S MOTION IN LIMINE?
During discovery the appellants ascertained that the City of Meridian had received a letter and a federal publication from the Consumer Product Safety Commission of which the city engineer was aware, concerning the potential dangers of refuse bins similar to the one in the case sub judice. Anticipating appellant would introduce evidence relating to the letter to show that the City of Meridian had notice of the instability of the refuse bin, the City made a motion in limine, which was granted by the trial court, to exclude such evidence.
Counsel for the plaintiff called Garrett, the city engineer in charge of sanitation, as an adverse witness. Since the court granted the City of Meridian's motion in limine excluding all evidence pertaining to the letter from the Consumer Product Safety Commission, the court allowed counsel for plaintiff to question Garrett in reference to said letter in the absence of the jury to allow plaintiff to make its record. During this testimony in the absence of the jury, Garrett admitted having received and having read the letter and publication from the Consumer Product Safety Commission wherein it was brought to the city's attention that the refuse bins were a potential threat to the safety of young children.
Harvey B. Ray, counsel for Bill Gordon, an appellee herein, cross-examined Garrett. During the cross-examination, in thepresence of the jury, the witness testified that he had never received any information that the garbage bins were unstable or dangerous.
Counsel for Maranda Ann Whittley asked permission of the judge to seek to impeach Garrett's testimony using the letter from the Consumer Product Safety Commission. The court denied the request.
The appellant should have been allowed to impeach the witness' testimony to show that the city had notice of the potential danger of the refuse bins. We find that this letter was admissible under the Mississippi Rules of Evidence. There was no basis for the court's exclusion of the letter. Furthermore, the trial court made no findings of fact or conclusions of law setting forth its reasons for granting the motion in limine. The letter did not constitute hearsay because the appellant offered the letter simply to show notice of the danger of the refuse bin on behalf of the city, not to argue the truth of the content of the letter.
We further find that exclusion of the letter allowed the defense to project a false premise to the jury since the witness Garrett denied having notice of any potential danger stemming from use of the refuse bin in question and since the trial court refused to allow counsel for appellant to use the letter to impeach Garrett's testimony.
The trial court again erred in disallowing appellant to "pierce the shield" of the order in limine to impeach Garrett's testimony by introduction of the letter.
The primary purpose of a pre-trial motion in limine is to exclude from trial evidence highly prejudicial to the movant, not *Page 1344 
to exclude irrelevant evidence. Proper v. Mowry, 90 N.M. 710,568 P.2d 236 (1977). If a pre-trial motion in limine is granted, the court will order opposing counsel to make no reference to the evidence at trial within the hearing of the jury. This eliminates the danger that the evidence will be introduced under the guise of a question propounded to a witness. It also eliminates the necessity of having to rely upon curative measures to safeguard the parties against the prejudicial impact that a submission of improper evidence may have upon the jury.
Once a pretrial motion to exclude by virtue of an order in limine has been granted, the moving party has a binding court order instructing opposing counsel to make no reference to the excluded evidence within the hearing of the jury. Davis, The Motion in Limine — A Neglected Trial Technique, S. Washburn L.J. 232 (1966). The trial court has an obligation to enforce this order. See Burdick v. York Oil, 364 S.W.2d 766, 770 (Tex.Civ.App. 1963). It is the trial court's responsibility to assume the initiative in compelling compliance with its order.Burdick at 770. Therefore, if the order is violated, the moving party should not be required to voice an objection in the presence of the jury. An objection will merely serve to call the jury's attention to the improperly submitted evidence. Bradbeerv. Scott, 193 Cal.App.2d 575, 14 Cal.Rptr. 458, 459 (1961);Department of Public Works Buildings v. Sun Oil Co., 66 Ill. App.3d 64, 22 Ill.Dec. 826, 383 N.E.2d 634 (1978); McClintock v.Travelers Ins. Co., 393 S.W.2d 421, 423-424 (Tex.Civ.App. 1965);State v. Smith, 189 Wn. 422, 429, 65 P.2d 1075, 1078 (1937).
Before granting a motion in limine, courts must be certain that such action will not unduly restrict opposing party's presentation of its case. Reidelberger v. Highland Body Shop,Inc., 83 Ill.2d 545, 48 Ill.Dec. 237, 416 N.E.2d 268 (1981). The appellant was unduly restricted in the presentation of its case by the granting of the motion in limine in that the appellant was not able to show that the City had notice of the potential danger of the refuse bin.
The Kansas Supreme Court, in State v. Quick, 226 Kan. 308, 311, 597 P.2d 1108 (1979) held that a motion in limine "should be granted only when the trial court finds two factors are present: (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury. State v. Massey,242 Kan. 252, 747 P.2d 802, 810 (1987). We adopt the test set forth by the Kansas court in Quick. Based upon that test, it is apparent that the granting of order in limine was erroneous.
In McCay v. Jones, 354 So.2d 1095 (Miss. 1978) the appellee was granted a motion in limine excluding the appellants from calling certain doctors. The basis for the motion in limine was that the plaintiff did not want to have to object on the grounds of privilege in front of the jury. The appellants argued that in granting the appellee's order in limine the trial court effectively precluded them from rebutting the statutory presumption under Miss. Code Ann. § 41-9-119[1] that medical expenses covered by the bills were necessary and reasonable, thereby raising prima facie evidence to an irrebuttable presumption.
We held that precluding the defendants from examining the physicians within the narrow scope of rebutting the reasonableness of the expenses amounted to a violation of due process. Similarly, in the case sub judice the trial court in refusing to allow the appellant to impeach Garrett (with the letter) violated Whittley's right to due process.
The appellant's right to due process was violated when the lower court refused to allow the attorney for appellant to impeach Garrett's testimony denying notice with the letter from the Consumer Products Safety *Page 1345 
Commission. The result of the trial court's refusal being that the jury was allowed to believe that there had never been any notice given regarding the stability of the refuse bins where there had actually been notice of twenty four deaths. Broad discretion is vested in the trial court to guard against unfair innuendos which might arise as a result of trial strategy. And if, as is sometimes the case, such events do occur in the course of a trial, the jury can be firmly instructed to disregard them.McCay at 1100. In the instant case the trial judge refused to allow the attorney for appellant to clear up the misrepresentation made by Garrett and also refused to instruct the jury to disregard the testimony. This assignment of error is well taken and this Court reverses and remands for a new trial.
 DID THE TRIAL COURT ERR IN GRANTING INSTRUCTIONS D-I-5a AND D-I-13a?
The trial court granted Instructions D-I-5a and D-I-13a over the appellant's timely objection.
Instruction D-I-5a reads as follows:
 The court instructs the jury that the fact that the court has submitted the case to the jury to decide is no indication one way or the other, as to what the verdict of the jury should be and must not be so considered by the jury. Further, when you retire to the jury room you must first place the responsibility for the accident in which Maranda Ann Whittley was injured and you should not consider, and you are not to be concerned with, the question of damages against The City of Meridian unless and until you first find from the evidence, under the instructions of the court, that The City of Meridian is, in fact, liable to plaintiffs; further, that plaintiffs are entitled to damages over and above the total amount of money already paid or guaranteed to be paid, as shown by the evidence, by Taylor Properties, Ltd. and Payson Casters, Inc.
 In a case such as this, where requested, the court always instructs the jury on the measure of damages. Such instructions in the measure of damages are given so that the jury may be enlightened on all legal phases of the case, but the jury must not think because these instructions have been given on this subject that they must award any damages whatever to the plaintiffs against the defendant, The City of Meridian, over and above the total amount of money already paid or guaranteed to be paid, as shown by the evidence, by Taylor Properties, Ltd. and Payson Casters, Inc.
 You have no right to compromise in your verdict between the question of liability and the amount of damages; if you find, according to the law as given to you in the written instructions of the court, under the evidence in the case, that the defendant, The City of Meridian, is not liable, then the plaintiffs are not entitled to recover any sum from the defendant, The City of Meridian, whatsoever, and it is your sworn duty to so find by your verdict.
D-I-13a reads as follows:
 The court instructs the jury that the fact that Taylor Properties, Ltd. and Payson Casters, Inc., or those acting on their behalf, have paid, and agreed to pay, guaranteed sums of money or value, as shown by the uncontradicted proof in this case, regardless of whether Maranda Ann Whittley lives or dies, is a fact and circumstance which you must consider in arriving at your verdict in this case. If you find from the evidence that such sums so paid, and being paid by and on behalf of Taylor Properties, Ltd. and Payson Casters, Inc., constitute payment in full for plaintiffs' claims herein, regardless of the question of legal liability, then plaintiffs' claims against The City of Meridian herein are satisfied and barred, and, if you so find, then your verdict should be for the defendant, The City of Meridian. In other words, The City of Meridian is entitled to credit herein on all such sums so paid by or on behalf of Taylor Properties, Ltd. and Payson Casters, and such payment must be taken into consideration by you in arriving at your verdict. *Page 1346 
At trial, the attorney for Maranda objected to these instructions arguing that the instructions had the effect of instructing the jury that they could not give the appellant a verdict unless the amount the jury determined was owed by the City of Meridian was in excess of what was guaranteed to be paid by the defendants who had settled out of court with Maranda Ann Whittley.
Garcia v. Coast Electric Power Association, 493 So.2d 380, 385 (Miss. 1986) recognizes that there are two acceptable procedures used to determine the damages due to a plaintiff where co-defendants are involved and one co-defendant has settled with the plaintiff. The first procedure, similar to the one used at trial in the instant case, allows the defendant to show, either by the plaintiff or proper witnesses or evidence, that a settlement has been made with one or more of the defendants and the amount of that settlement. The jury is then instructed that if it returns a verdict for the plaintiff, the amount returned would be reduced by the amount of the settlement made with the plaintiff by the other defendant. Bogdahn v. Pascagoula StreetRailway and Power Co., 118 Miss. 668, 79 So. 844 (1918) andWood v. Walley, 352 So.2d 1083 (Miss. 1977).
The second acceptable procedure allows the parties to stipulate, outside of the presence of the jury, that a settlement has been made by one or more of the defendants and the amount of the settlement. The jury would not be informed of the settlement or the payment, and, if a verdict were returned for the plaintiff, the trial judge would reduce the amount awarded by the jury by the amount of the settlement by the other defendant or defendants.
This Court, in Garcia, recognized the second procedure to be the most preferable but stated that the use of either procedure would not constitute reversible error. Garcia at 385.
We hereby modify Garcia and hold that the first procedure wherein the jury is informed of the amount of settlement is not acceptable. To inform a jury of the amount of a settlement prior to its returning a verdict for a joint tort feasor or co-defendant would certainly unnecessarily influence a jury in its decision. It is unreasonable to believe that a jury which had been informed that a settlement of $2,544,275 had been entered into by the plaintiff would not be affected in returning its verdict. The tendency to determine that the plaintiff had already been adequately compensated would be too tempting. Such temptation can easily be prevented by use of the procedure wherein the jury is informed of the existence of a settlement but not the amount of settlement (if settlement occurs after trial begins then it will be necessary to inform the jury why the defendants are no longer present). If the jury returns a judgment in excess of the settlement the judge can simply adjust the judgment by the amount of the settlement.
Another reason for our modifying Garcia is to inform a jury of the amount of a structured settlement is to surely mislead them. The amount a defendant is required to pay via a structured settlement should be considered at its actual present cash value of the settlement rather than the total of a flow of monies over a period of time. The trial court shall, of course, in adjusting any verdict, consider only the present value of the settlement figure and not the flow of income over a period of time.
This Court reverses and remands for a new trial in conformity with this opinion.
DID THE TRIAL COURT ERR IN GRANTING A PEREMPTORY INSTRUCTION FOR THE APPELLEE, BILL GORDON?
Bill Gordon, d/b/a Bill Gordon Enterprises manufactured the refuse bin. Gordon sold the bin to Taylor Properties, Ltd. on July 12, 1978. The plaintiff was injured on June 1, 1981. The trial court granted Gordon's peremptory instruction. The basis for granting the instruction was that the court determined that Gordon had contacted Taylor Properties on at least three (3) occasions to inform them that the dumpster needed repairing to prevent it from being unstable. The court reasoned that since *Page 1347 
the owner was given notice by Gordon of the instability of the dumpster, but refused to allow Gordon to repair it that Gordon was cured of any liability on his behalf and was therefore entitled to a directed verdict.
The rule for determining whether a peremptory instruction is appropriate requires that all evidence favorable to the party against whom the peremptory instruction is requested must be accepted as true, all evidence in favor of the party requesting the peremptory instruction in conflict with that of the other party must be disregarded, and, if the evidence and the reasonable inferences to be drawn from same will support a verdict for the party against whom it is requested, then the peremptory instruction should be refused. Paymaster Oil Mill Co.v. Mitchell, 319 So.2d 652 (Miss. 1975).
The basis of Maranda Whittley's claim against Gordon rests on the theory of strict liability in tort based on the defective design of the garbage bin.
Section 402A of the Restatement (Second) Torts (1965) requires proof of three elements in order to prevail in an action based on strict liability in tort. These are,
 (1) that the plaintiff was injured by the product,
 (2) that the injury resulted from a defect in the product which rendered it unreasonably dangerous, and
 (3) that the defect existed at the time it left the hands of the manufacturer.
Mississippi adopted the language of 402A in State Stove Mfg. Co.v. Hodges, 189 So.2d 113 (Miss. 1966); Brown v. Williams,504 So.2d 1188, 1191 (Miss. 1987).
In determining whether a product is unreasonably dangerous a reasonable person must conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. This is a question for the finder of fact.
Frequently, the negligent conduct of a third person is, in combination with a product defect, the cause of an injury. That conduct may be of such a nature or kind as to constitute a superceding cause.
There is a tendency for courts to hold that intervening conduct or misconduct of a kind that is rare and unusual, and in that sense not reasonably foreseeable, will sever the chain of causation. This use must be one that a maker could not be expected to guard against in the designing of his product. So if the product was defective as designed for its ordinary and reasonably foreseeable uses or if defective because of a flaw in it, but a use was made of the product that the maker could not be expected to guard against, then the accident was not proximately caused by the product defect. Thus, the manufacturer of a power mower was held not liable when a seven-year-old boy was using the mower as a toy and a plaything even though the mower might have been defectively designed. Wenzell v. MTD Products, Inc.,32 Ill. App.3d 279, 336 N.E.2d 125 (1975). Likewise, any substantial alteration of a product that was not contemplated by the manufacturer is likely to sever the chain of causation.
The defense of intervening cause has been successfully used in a products liability case in Mississippi grounded solely in negligence. E.I. DuPont De Nemours Co. v. Ladner, 221 Miss. 378, 73 So.2d 249 (1954). In DuPont v. Ladner, a retail merchant was given a warning (received by letter) by the defendant, a chemical manufacturer, informing him that soybean meal purchased by the retailer from the defendant and treated with a certain poison was poisonous to cattle. We held that failure to heed the warning was an intervening act by the retailer breaking the chain of causation between the negligence of the defendant and the injury and death of plaintiff's cattle.
The test for a directed verdict requires that all evidence in favor of Maranda Whittley be accepted as true and all evidence in favor of Gordon be rejected. If the evidence of Maranda Whittley and reasonable inferences to be drawn therefrom will support a verdict in her favor the directed verdict should be denied.
Maranda put on evidence that Gordon manufactured the refuse bin in a defective condition. Gordon's argument that Taylor *Page 1348 
Properties' negligent maintenance constituted an intervening cause must be disregarded for purposes of a motion for directed verdict. Therefore, the court erred in granting Gordon's motion for a directed verdict when it should have allowed the jury to determine whether the garbage bin was in fact defective and whether or not there was an intervening cause breaking the chain of causation and relieving Gordon of any liability. This Court reverses and remands for a new trial based on this assignment of error.
REVERSED AND REMANDED FOR A NEW TRIAL.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
[1] Mississippi Code Ann. § 41-9-119 (1972) provides:
Proof of medical, hospital, and doctor bills were paid or incurred because of any illness, disease or injury shall be prima facie evidence that such bills so paid or incurred were necessary and reasonable.