IN THE SUPREME COURT OF MISSISSIPPI
NO. 92-CA-01017-SCT

*CAROLYN McCORD*

*v.*

*GULF GUARANTY LIFE INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/12/92 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER |
| COURT FROM WHICH APPEALED: | UNION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DUNCAN L. LOTT |
| ATTORNEY FOR APPELLEE: | LESTER SUMNERS |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 8/14/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/5/97 |

**EN BANC.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. Carolyn McCord appeals the June 12, 1992 jury decision of the Union County Circuit Court finding her property insurer, Gulf Guaranty Life Insurance Company, not liable for payment on a fire loss claim. We find that the circuit court erred in denying McCord's motion in limine and in granting Gulf Guaranty's Instruction D-3 and therefore, reverse and remand for a new trial.

I.

¶2. Carolyn McCord's house in Blue Springs, Mississippi was destroyed by fire sometime during the night of November 8, 1990. The house and its contents were insured for $67,000 under a Gulf Guaranty Life Insurance Company comprehensive dwelling policy in effect at the time of the fire.

¶3. McCord had left Blue Springs for Dallas, Georgia with a friend, Lisa Ross, the day before the fire, with plans to be gone for two or three weeks. Bo Evans, who she was visiting, and Phil Sparks arrived in Dallas the same day. McCord learned of the fire after an unidentified person called Evans' mother.

¶4. McCord reported the loss to her insurance agent, Savery Insurance, around November 14, 1990. She was given a questionnaire to complete and advised by the agent to make a list of the contents destroyed in the fire. She reported on the questionnaire that she did not know how the fire started, but that it may have been caused by faulty wiring. She also indicated that the Sheriff had told her on September 29, 1990, that "my neighbors wanted to burn me out."

¶5. On November 15, 1990, Shelby Sparks, an acquaintance of McCord's, reported to the Sheriff's office that, about two weeks before the fire, she had seen McCord pay her ex-husband, Phil Sparks, and his friend, Danny Steele, some money. Sparks claimed that Steele had told her that McCord paid them $300 to set fire to her house. Sparks later tried to recant her statement, variously claiming that she had made it to get her ex-husband in trouble, that she wanted the $1,000 reward offered in the case and that McCord's friend, Lisa Ross, had threatened to kill her if McCord went to jail.

¶6. The day after McCord filed her claim, Eugene Adcock and Cecil McCrory, investigators for Gulf Guaranty Life Insurance Company, McCord's property insurance carrier, began their examination of the debris and determined that the fire had been started by a liquid accelerant. They reported to Gulf Guaranty that the house had been destroyed by an incendiary fire.

¶7. Laurel Waters, a qualified gas chromatographic analyst, indicated in her certified test report that the two samples of rubble from the kitchen and living room of the house that she tested contained components of aromatic naptha, an industrial solvent. McCrory found newspaper stuck in the chimney flue and signs of "spalling" in the chimney, suggesting to him that "this fire was set from the outside using the paper as wick to go through and set the Naphtha on the inside." Robert Wilhite, a New Albany Fire Department volunteer who was accepted as an expert in the field of fire investigation, found multiple points of origin as well as evidence of "spalling."

¶8. On August 26, 1991, Carolyn McCord sued Gulf Guaranty after her claim was denied. She further sought punitive damages, alleging that the insurer had acted in bad faith in refusing to pay the claim. Gulf Guaranty defended on grounds that the fire was incendiary in nature, and that McCord had conspired with others to set the fire.

¶9. A trial was held on June 11 and 12, 1991. The jury returned a verdict for Gulf Guaranty. After McCord's motion for a new trial was denied, she appealed to this Court.

II.

¶10. McCord first contends that the circuit court erred in denying her two motions in limine, both of which were intended to limit the testimony of the Union County Sheriff. A motion in limine should be granted only when "(1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury." *Whittley v. City of Meridian,* 530 So. 2d 1341, 1344 (Miss. 1988)(quoting *State v. Quick,* 242 Kan. 252, 747 P.2d 802, 810 (1987)). *See also Gifford v. Four-County Electric Power Ass'n,* 615 So. 2d 1166, 1171 (Miss. 1992); *Davis v. Neshoba County General Hospital,* 611 So. 2d 904, 906 (Miss. 1992). The primary purpose of the motion in limine is to exclude evidence that would be highly prejudicial to the moving party. *Gifford,* 615 So. 2d at 1171-1172.

¶11. Considering the standard to which the trial court is held in determining whether such motion should be granted, we look first at whether testimony that the sheriff had received an anonymous telephone call threatening to blow up McCord's house would be either inadmissable under the rules of evidence or prejudicial to her case. McCord sought to suppress a statement made to her by the Union County Sheriff, who, testified at trial:

Q: Was any statement made by you to her at that time about anyone wanting to do harm to her house?

A: Yes, sir. To the best of my knowledge I made a statement to Ms. McCord that a lady had called me; that she had found some dope, marijuana on her son; and that he told her that it came from Carolyn McCord's house. He bought it at Carolyn McCord's house; and that if I didn't do something about it, they was going to blow the house off the hill.

¶12. McCord also asserts that the circuit court should have excluded evidence that cash in the amount of $956 was found in a September, 1990, search of her home by the Union County Sheriff. At trial, Gulf Guaranty questioned McCord about her employment history, on the theory that she might have had difficulty meeting her house payments, thus providing a motive for the fire. During the months prior to the fire, she had held a variety of odd jobs. She stated in her deposition that the cash belonged to the Blair Company, despite invoices indicating that she had sold only $639.94 of its products over the previous seven months. Gulf Guaranty asserted that evidence of cash in the house, together with McCord's claim that it came from sales of Blair products, might have indicated that she was conducting a business in her home, contrary to provisions of the policy.

¶13. Looking at the inferences that may be drawn from the combination of testimony that threats to blow up McCord's house were drug-related and that the sheriff had searched her house in September of 1990, less than two months before the fire, and found a large amount of cash, we have no doubt that the evidence sought to be excluded would be highly prejudicial to McCord. Further, the fact that the sheriff had made a call to McCord was irrelevant and hearsay. The circuit court should have granted McCord's motion in limine because the evidence at issue was unfairly prejudicial.

III.

¶14. Gulf Guaranty sought to void its policy with McCord on grounds that she had misrepresented whether she had ever been arrested and that she had indicated on her proof of loss questionnaire that she thought the fire could have been caused by faulty wiring. The trial court granted Gulf Guaranty's Instruction D-3, which allowed the jury to consider *any* false or incorrect statements made by McCord as requiring a verdict in its favor. Instruction D-3 reads as follows:

Under Mississippi law an insurance company has the right to depose its insured after a loss and if the insured does not answer truthfully all questions material at the time asked, then the policy is voided. Defendant Gulf Guaranty Life Insurance Company had the right under its policy to take plaintiff's deposition on October 29, 1991, and plaintiff was required to answer all questions truthfully. If you believe from clear and convincing evidence that plaintiff gave a false answer to any question then you shall find for the defendant.

McCord specifically complains of the language, "false answer to any question." Gulf Guaranty,

however, contends that there is nothing wrong with the instruction because it is taken "verbatim" from ***Edmiston v. Schellenger,*** 343 So. 2d 465 (Miss. 1977). Even if we could find the specific language in ***Edmiston*** that the insurer claims to have followed "verbatim" in drafting the instruction, we have admonished attorneys against taking language from our decisions and using it to create jury instructions. ***Day v. Morrison,*** 657 So. 2d 808, 814 (Miss. 1995)(citing ***Freeze v. Taylor,*** 257 So. 2d 509, 511 (Miss. 1972)).

¶15. If, as Gulf Guaranty appears to assert, the insurer seeks to void the policy based on a "concealment" clause, it carries the burden of showing "that statements by the insured were (1) false, (2) material and (3) knowingly and wilfully made." ***Hall v. State Farm Fire & Casualty Co.,*** 937 F.2d 210, 214 (5th Cir. 1991). Further, under Mississippi law, when violation of a concealment clause is charged, as distinguished from those cases where fraud is raised as a defense, proof of the violation is subject only to the "preponderance of the evidence" standard, not the "clear and convincing evidence" standard articulated in the instruction. ***Id.*** at 215 (citing ***Weems v. American Security Insurance Co.***, 450 So. 2d 431 (Miss. 1984)). The instruction, as written, is confusing to the jury in its reference to giving a false answer to *any* question in light of its earlier reference to answering all questions truthfully "material at the time asked." It also neglects to instruct the jury that any misstatement must be wilful or intentional in order for the policy to be voided. Further, by failing to acknowledge that the burden of proof is on the insurer and employing the "clear and convincing evidence" standard, it does not present an accurate statement of the law. Accordingly, the instruction should not have been given.

IV.

¶16. There is no merit to the remaining issues raised by McCord and we decline to address them here. Because the circuit court erroneously denied her motion in limine and granted Instruction D-3, a confusing and incorrect statement of the law, we reverse and remand for a new trial consistent with this opinion.

¶17. **REVERSED AND REMANDED.**

**BANKS AND MILLS, JJ., CONCUR. MILLS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., AND SULLIVAN, P.J. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, P.J., AND PITTMAN, J. ROBERTS, J., NOT PARTICIPATING.**

**MILLS, JUSTICE, SPECIALLY CONCURRING:**

¶18. While I agree with the decision reached by the majority in this case, I write separately because the majority has used an incorrect standard in determining that the trial court erred in denying McCord's motion in limine.

¶19. The majority correctly states the two-part test for granting a motion in limine, which should be

granted only when "(1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury." ***Whittley v. City of Meridian***, 530 So. 2d 1341, 1344 (Miss. 1988) (quoting ***State v. Quick***, 242 Kan. 252, 747 P.2d 802, 810 (1987)). However, the majority then states that its determination is whether the evidence sought to be excluded by McCord's motion in limine "would be either inadmissible under the rules of evidence *or* prejudicial to her case." (emphasis added). The majority concludes that because the evidence would be highly prejudicial to McCord, the motion in limine should have been granted. This simply is not the correct standard.

¶20. To be sure, any evidence sought to be introduced against a party is almost certain to be prejudicial to that party's case. Such is the inherent nature, and in fact the very purpose, of evidence. The question for purposes of a motion in limine, however, is whether the evidence is highly prejudicial *and inadmissible*. The majority fails even to mention the admissibility, or lack thereof, of the evidence sought to be excluded by McCord's motion in limine. However, because the testimony indicating that threats to blow up McCord's house were drug-related is inadmissible hearsay, the majority is correct in finding that the trial court should have granted McCord's motion in limine to exclude the evidence.

**LEE, C.J., AND SULLIVAN, P.J., JOIN THIS OPINION.**

**SMITH, JUSTICE, DISSENTING:**

¶21. I respectfully disagree with the majority's contention that Instruction D-3 is confusing to the jury because of its reference to *"giving a false answer to any question"* in view of the earlier reference therein to *"answering all questions truthfully material at the time asked."*

¶22. First, there is nothing confusing about these two phrases. Simply put, both are two different ways of saying the same thing. Regardless, McCord was required to truthfully answer questions posed to her concerning the fire loss claim that she filed against her insurance company. Instead, she gave several false responses to certain questions which were clearly material to the fire investigation.

¶23. While the majority faults the argument of the carrier that Instruction D-3 was taken "verbatim" from ***Edmiston v. Schellenger***, 343 So. 2d 465 (Miss. 1977), nevertheless, ***Edminston*** clearly held that an insured, who knew that his statement made during a deposition concerning circumstances surrounding a fire was incorrect, had a duty to correct such answers at the earliest possible date. The ***Edminston*** Court stated that "The insurance company had a right to obtain truthful answers from its insured as to material matters. . . . This Court has consistently held that a refusal to answer material questions will defeat recovery on the policy." ***Edminston***, at 467, *citing* ***Taylor v. Fireman's Fund Ins. Co.,*** 306 So. 2d 638, 644-45 (Miss. 1975). The Court further stated, "The company needed to introduce no evidence to prove Schellenger's intent to deceive. Where false and material statements are knowingly and willfully made, "the intent to deceive will be implied." ***Edminston*** at 467, *citing* ***Claxton v. Fidelity & Guar. Fire Corp.,*** 179 Miss. 556, 175 So. at 212 (1937). Here, McCord's knowingly and willfully made false statements demonstrate her intent to deceive her carrier, this clear

intent to deceive is implied.

¶24. More importantly, McCord's only objection was to the phrase "false answer to any question" which the trial court, sua sponte, corrected. Equally important, however is the fact that the instruction at issue referred only to the plaintiff's deposition which was not shown to or examined by the jury. The only knowledge gained by the jury about McCord's false statements resulted solely from defense counsel's reading to her on cross examination. The deposition statements of McCord put in issue were: (1) Her sources of income; (2) Whether she went to Dallas, Georgia, and if so, whether she intended to remain there for three to four weeks; and (3) Whether she reported power failures to the electric company which they attributed to a lack of proper grounding. Clearly, each of these statements were material and admissible.

¶25. McCord was unable to explain from what source she had received large sums of cash found on her premises and recently deposited into her account. She was unemployed at the time, yet her only attempt to explain how she came to have such large sums was that she had received such sums from Miller, and the remainder from Blair, (an Avon-type selling business). The proof in this record however, showed that she had only ordered $639.94 worth of Blair products during a seven month time frame in question and had profited only $50 to $75 per week. Thus, based on the facts such explanation supposedly accounting for the large sum of cash was physically impossible. The jury obviously agreed.

¶26. McCord claimed that she had complained to the electric company about a power failure in January and that a service representative had come out to her home and advised her that the house was not grounded. However, at trial, Harold Smith, the manager of the electric company, testifying from a strict log, stated that upon searching the months of December, January, and February of 1990, that there was only one call from McCord, made in January. Smith stated that McCord's sole complaint on that single occasion was noise on her outside light.

¶27. Obviously, the jury could have concluded that McCord wilfully and deliberately gave false answers to material questions in order to cover up the arson. McCord failed to object to the proof of false statements. M.R.C.P. l5(b), requires an objection to evidence on issues not plead and provides that upon objection, liberal amendment should be allowed. However, if there is no objection to evidence, it is waived and the issue is treated as tried by consent. *Queen v. Queen*, 551 So. 2d 197, 200 (Miss. 1989); *PACCAR Financial Corporation v. Howard*, 615 So. 2d 583 (Miss. 1993).

¶28. The majority also faults the trial court in its denial of McCord's motion in limine concerning her attempt to limit the testimony by the Sheriff of Union County that an anonymous caller had telephoned him threatening to blow up McCord's house and that he had seized $956 in cash from McCord on September 28th, as well as recent deposits of large sums of cash.

¶29. McCord's possession of large sums of cash and deposit thereof with no reasonable explanation was material and presented a fair issue of fact for the jury. MRE 401 and 402, favor the admission of evidence that makes the existence of a fact of consequence more probable than not. In *Foster v. State*, 508 So. 2d 1111, 1117 (Miss. 1987), this Court stated, "If the evidence has any probative value at all, the rule favors its admission." *Id.* The evidence at issue here is not one which brings Rule 403 into play, as that only occurs when the evidence tendered is "unfairly prejudicial." Here, the issues of motive, policy violation by conducting a business in her home, and more importantly false

statements on policy examination are clearly, "facts of consequence," hence admissible. The admission of this evidence was discretionary with the trial court and this Court will only reverse when the trial court has abused its discretion. Exclusion thereof under Rule 403 surfaces when prejudice *"substantially outweigh,"* probative value, and still, it is within the trial judge's discretion to allow the evidence. **Foster**, at 1117. *See also,* **Williams v. State**, 543 So. 2d 665, 667 (Miss. 1989); **Jenkins v. State**, 507 So. 2d 89, 92 (Miss. 1987).

¶30. The evidence against McCord is overwhelming as to arson. Shelby Sparks voluntarily reported to the Union County Sheriff that on November 3, 1990, she had seen McCord pay Danny K. Steele and Phil Sparks, $300 to burn her house. She also stated that the two men on November 8, 1990, stated that they had burned McCord's house. Shelby only attempted to change her version when Lisa Ross, who had been staying with McCord, threatened Shelby that she would be killed if McCord went to jail.

¶31. The arson investigator for Union County, Tommy Wilhite, accepted as an expert, testified that he found five different areas of spalling and concluded arson to be the cause of the fire. Cecil McCrory, an arson expert, testified he too found five areas of spalling. He found burned paper in a clean chimney flue that was open into the living room of the house. McCrory opined that a large quantity of accelerate was poured and lit with the burning paper through the flue in order to avoid flash over burn injuries. McCory took samples which were sent to Laura Waters, an expert of Applied Technical Services, Inc., who determined that the accelerate used in the fire was heavy aromatic naphtha, a substance used in the furniture business and which burns hotter than gasoline.

¶32. McCord had worked for a furniture manufacturer. Danny Steele had previously operated his own furniture business and Phil Sparks had worked for Bassett Furniture Company. Hence, while knowledge of the particular accelerate used here might not be one familiar to the average person, because of their employment in the furniture business, these three individuals did not fit the average person mold. According to Shelby Sparks, Phil was still employed there on November 2, 1990, the day prior to McCord's paying them to burn her house.

¶33. McCord claimed not to know how the fire started, then claimed that wiring might be the cause, since she had reported to the New Albany Electric Department that her lights went out in January 1990 and that they told her that her house was not grounded. Harold Smith, testifying from his log, stated that only one call was received from McCord during a three month period including January 1990, and she only complained that her outside light was making a noise.

¶34. McCord was in serious financial condition during 1990. She had only ordered $639.94 worth of Blair products from March until September 20, 1990. McCord admitted netting only $50 to $75 per week from her selling of Blair products. McCord was asked to produce bank account records and she gave a Bank of Mississippi checking account number. At trial, it was determined that the account number that McCord had given to her carrier representing it as her own, in fact, belonged to another Caroyln McCord. McCord, the plaintiff, had never had a checking account at Bank of Mississippi. McCord could not explain how she got that particular number. McCord's banking records with Peoples Bank & Trust Company showed deposits of $3,344.63 including $2,300 in cash. She claimed $l3,968 contents lost in the fire, all of which she claimed to have been purchased with cash, except for a refrigerator. McCord's house payments were going up and on November 8, 1990, after

withdrawing $60 cash she had only $166.54 remaining in her account.

¶35. Proof of arson is overwhelming, McCord had motive, and gave false statements during the investigation, all of which was material to the case at bar. Wilful incendiarism is a complete defense for the insurance carrier. There are three elements required, proof of an incendiary fire, motive of the insured, and evidence that the insured set the fire or procured its being set. ***McGory v. Allstate Ins. Co.,*** 527 So. 2d 632, 633 (Miss. 1988). In the case *sub judice*, it is clear that all three elements were sufficiently proven.

¶36. I respectfully dissent.

**PRATHER, P.J., AND PITTMAN, J., JOIN THIS OPINION.**