McRAE, Justice,
for the Court:
¶ 1. Carolyn McCord appeals the June 12, 1992 jury decision of the Union County Circuit Court finding her property insurer, Gulf Guaranty Life Insurance Company, not liable for payment on a fire loss claim. We find that the circuit court erred in denying McCord’s motion in limine and in granting Gulf Guaranty’s Instruction D-3 and therefore, reverse and remand for a new trial.
I.
12. Carolyn McCord’s house in Blue Springs, Mississippi was destroyed by fire sometime during the night of November 8, 1990. The house and its contents were insured for $67,000 under a Gulf Guaranty Life Insurance Company comprehensive dwelling policy in effect at the time of the fire.
¶ 3. McCord had left Blue Springs for Dallas, Georgia with a friend, Lisa Ross, the day before the fire, with plans to be gone for two or three weeks. Bo Evans, who she was visiting, and Phil Sparks arrived in Dallas the same day. McCord learned of the fire after an unidentified person called Evans’ mother.
¶ 4. McCord reported the loss to her insurance agent, Savery Insurance, around November 14, 1990. She was given a questionnaire to complete and advised by the agent to make a list of the contents destroyed in the fire. She reported on the questionnaire that she did not know how the fire started, but that it may have been caused by faulty wiring. She also indicated that the Sheriff had *91 told her on September 29, 1990, that “my neighbors wanted to burn me out.”
¶ 5. On November 15,1990, Shelby Sparks, an acquaintance of McCord’s, reported to the Sheriff’s office that, about two weeks before the fire, she had seen McCord pay her ex-husband, Phil Sparks, and his friend, Danny Steele, some money. Sparks claimed that Steele had told her that McCord paid them $300 to set fire to her house. Sparks later tried to recant her statement, variously claiming that she had made it to get her ex-husband in trouble, that she wanted the $1,000 reward offered in the ease and that McCord’s friend, Lisa Ross, had threatened to kill her if McCord went to jail.
¶ 6. The day after McCord filed her claim, Eugene Adcock and Cecil McCrory, investigators for Gulf Guaranty Life Insurance Company, McCord’s property insurance carrier, began their examination of the debris and determined that the fire had been started by a liquid accelerant. They reported to Gulf Guaranty that the house had been destroyed by an incendiary fire.
¶ 7. Laurel Waters, a qualified gas chromatographic analyst, indicated in her certified test report that the two samples of rubble from the kitchen and living room of the house that she tested contained components of aromatic naptha, an industrial solvent. McCrory found newspaper stuck in the chimney flue and signs of “spalling” in the chimney, suggesting to him that “this fire was set from the outside using the paper as wick to go through and set the Naphtha on the inside.” Robert Wilhite, a New Albany Fire Department volunteer who was accepted as an expert in the field of fire investigation, found multiple points of origin as well as evidence of “spalling.”
¶ 8. On August 26, 1991, Carolyn McCord sued Gulf Guaranty after her claim was denied. She further sought punitive damages, alleging that the insurer had acted in bad faith in refusing to pay the claim. Gulf Guaranty defended on grounds that the fire was incendiary in nature, and that McCord had conspired with others to set the fire.
¶ 9. A trial was held on June 11 and 12, 1991. The jury returned a verdict for Gulf Guaranty. After McCord’s motion for a new trial was denied, she appealed to this Court.
II.
¶ 10. McCord first contends that the circuit court erred in denying her two motions in limine, both of which were intended to limit the testimony of the Union County Sheriff. A motion in limine should be granted only when “(1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury.” Whittley v. City of Meridian, 530 So.2d 1341, 1344 (Miss.1988)(quoting State v. Massey, 242 Kan. 252, 747 P.2d 802, 810 (1987)). See also Gifford v. Four-County Electric Power Ass’n, 615 So.2d 1166, 1171 (Miss.1992); Davis v. Neshoba County General Hospital, 611 So.2d 904, 906 (Miss.1992). The primary purpose of the motion in limine is to exclude evidence that would be highly prejudicial to the moving party. Gifford, 615 So.2d at 1171-1172.
¶ 11. Considering the standard to which the trial court is held in determining whether such motion should be granted, we look first at whether testimony that the sheriff had received an anonymous telephone call threatening to blow up McCord’s house would be either inadmissable under the rules of evidence or prejudicial to her ease. McCord sought to suppress a statement made to her by the Union County Sheriff, who, testified at trial:
Q: Was any statement made by you to her at that time about anyone wanting to do harm to her house?
A: Yes, sir. To the best of my knowledge I made a statement to Ms. McCord that a lady had called me; that she had found some dope, marijuana on her son; and that he told her that it came from Carolyn McCord’s house. He bought it at Carolyn McCord’s house; and that if I didn’t do something about it, they was going to blow the house off the hill.
¶ 12. McCord also asserts that the circuit court should have excluded evidence that cash in the amount of $956 was found in a September, 1990, search of her home by the *92 Union County Sheriff. At trial, Gulf Guaranty questioned McCord about her employment history, on the theory that she might have had difficulty meeting her house payments, thus providing a motive for the fire. During the months prior to the fire, she had held a variety of odd jobs. She stated in her deposition that the cash belonged to the Blair Company, despite invoices indicating that she had sold only $639.94 of its products over the previous seven months. Gulf Guaranty asserted that evidence of cash in the house, together with McCord’s claim that it came from sales of Blair products, might have indicated that she was conducting a business in her home, contrary to provisions of the policy.
¶ 13. Looking at the inferences that may be drawn from the combination of testimony that threats to blow up McCord’s house were drug-related and that the sheriff had searched her house in September of 1990, less than two months before the fire, and found a large amount of cash, we have no doubt that the evidence sought to be excluded would be highly prejudicial to McCord. Further, the fact that the sheriff had made a call to McCord was irrelevant and hearsay. The circuit court should have granted McCord’s motion in limine because the evidence at issue was unfairly prejudicial.
III.
¶ 14. Gulf Guaranty sought to void its policy with McCord on grounds that she had misrepresented whether she had ever been arrested and that she had indicated on her proof of loss questionnaire that she thought the fire could have been caused by faulty wiring. The trial court granted Gulf Guaranty’s Instruction D-3, which allowed the jury to consider any false or incorrect statements made by McCord as requiring a verdict in its favor. Instruction D-3 reads as follows:
Under Mississippi law an insurance company has the right to depose its insured after a loss and if the insured does not answer truthfully all questions material at the time asked, then the policy is voided. Defendant Gulf Guaranty Life Insurance Company had the right under its policy to take plaintiffs deposition on October 29, 1991, and plaintiff was required to answer all questions truthfully. If you believe from clear and convincing evidence that plaintiff gave a false answer to any question then you shall find for the defendant.
McCord specifically complains of the language, “false answer to any question.” Gulf Guaranty, however, contends that there is nothing wrong with the instruction because it is taken “verbatim” from Edmiston v. Schellenger, 343 So.2d 465 (Miss.1977). Even if we could find the specific language in Edmi-ston that the insurer claims to have followed “verbatim” in drafting the instruction, we have admonished attorneys against taking language from our decisions and using it to create jury instructions. Day v. Morrison, 657 So.2d 808, 814 (Miss.1995)(citing Freeze v. Taylor, 257 So.2d 509, 511 (Miss.1972)).
¶ 15. If, as Gulf Guaranty appears to assert, the insurer seeks to void the policy based on a “concealment” clause, it carries the burden of showing “that statements by the insured were (1) false, (2) material and (3) knowingly and wilfully made.” Hall v. State Farm Fire & Casualty Co., 937 F.2d 210, 214 (5th Cir.1991). Further, under Mississippi law, when violation of a concealment clause is charged, as distinguished from those cases where fraud is raised as a defense, proof of the violation is subject only to the “preponderance of the evidence” standard, not the “clear and convincing evidence” standard articulated in the instruction. Id. at 215 (citing Weems v. American Security Insurance Co., 450 So.2d 431 (Miss.1984)). The instruction, as written, is confusing to the jury in its reference to giving a false answer to any question in light of its earlier reference to answering all questions truthfully “material at the time asked.” It also neglects to instruct the jury that any misstatement must be wilful or intentional in order for the policy to be voided. Further, by failing to acknowledge that the burden of proof is on the insurer and employing the “clear and convincing evidence” standard, it does not present an accurate statement of the law. Accordingly, the instruction should not have been given.
*93 IV.
¶ 16. There is no merit to the remaining issues raised by McCord and we decline to address them here. Because the circuit court erroneously denied her motion in li-mine and granted Instruction D-3, a confusing and incorrect statement of the law, we reverse and remand for a new trial consistent with this opinion.
¶ 17. REVERSED AND REMANDED.
BANKS and MILLS, JJ., concur.
MILLS, J., specially concurs with separate written opinion joined by DAN LEE, C. J., and SULLIVAN, P.J.
SMITH, J., dissents with separate written opinion joined by PRATHER, P. J., and PITTMAN, J.
JAMES L. ROBERTS, Jr., J., not participating.